DANIEL MILLER and others, Trading as DANIEL MILLER & COMPANY, *vs.* THE FARMERS AND MECHANICS' BANK OF CARROLL COUNTY.

*Lien of a Banker—Promissory Notes—Principal and Agent—Action for Money had and received.*

Whenever a banker or broker has advanced money to his customer, he has a lien on all the securities in his hands for the amount of his general balance, unless such securities are held under some special agreement.

Where a promissory note, payable to order, is endorsed by the payee without qualification, such endorsement imports property in the holder; and, without notice to the contrary, a person who receives it from such holder, has a right to treat him as the *bona fide* owner of the note, and is not bound to make inquiry whether he holds it as agent or otherwise.

D. M. & Co., sent two promissory notes, payable to their order and endorsed generally by them, to J. L. & Co., bankers, for collection. The latter sent them to their correspondents, the F. and M. Bank, endorsed, "for collection." The amount of the notes was collected by the Bank and passed to the credit of J. L. & Co., who subsequently failed, being at the time of their failure indebted to the Bank on the general balance of accounts between them. In an action by D. M. & Co., against the Bank to recover the amount collected on said notes, HELD:

1st. That the plaintiffs had a right to maintain an action against the defendant, under the well established rule, "That whenever by express agreement between the parties, a sub-agent is to be employed by the agent to receive money for the principal, or where an authority to do so may fairly be implied from the usual course of trade, or the nature of the transaction, the principal may treat the sub-agent as his agent, and when he has received the money, may recover it in an action for money had and received."

2d. That the right of the defendant to retain the proceeds of the notes in its hands to be applied in part extinguishment of the general balance remaining due on account by J. L. & Co., depended on the question, was credit really given to J. L. & Co., on the faith of these notes before the receipt of knowledge that they belonged to the plaintiffs?

3d. That if such credit were in fact given, it made no difference whether it was in the form of advances of money, or balances on account of mutual dealings between the parties, suffered to remain undrawn for.

4th. But if no such credit were in fact given, or if given, subsequent indemnity had been obtained in any way for any loss that might have been occasioned thereby, the plaintiffs were entitled to recover the amount of the notes, as so much money had and received by the defendant to their use.

5th. That unless some credit were given, or some risk or responsibility incurred upon the faith of the notes, the defendant would not be allowed to retain the money, simply because it had passed the amount to the credit of J. L. & Co., and they still owed a balance on account.

APPEAL from the Circuit Court for Carroll County.

This was an action of *assumpsit* instituted by the appellants against the appellee. The *narr.* contained only the common counts. The plaintiffs offered in evidence two promissory notes, payable to their order, and by them endorsed absolutely to Josiah Lee & Co., and by Josiah Lee & Co., endorsed to "Jacob Reese, Cashier, or order, for collection," and proved that the plaintiffs were the owners of the notes, and passed them to Josiah Lee & Co., and received no value therefor from Lee & Co., but merely passed the notes to them for collection; and that on the 8th of October, 1860, Lee & Co. transmitted the notes to the defendant for collection.

The plaintiffs also offered in evidence two letters from Lee & Co. to the defendant, stating that the notes were the property of the plaintiffs, and requesting the defendant to deliver the notes or the proceeds thereof to the plaintiffs; and that the letters were received by the defendant in due course of the mail. It was also admitted that the notes were duly paid at maturity.

The defendant then proved by Jacob Reese, that he had been cashier of the defendant for more than ten years; that from a time prior to 1857, the defendant had had extensive dealings with Josiah Lee & Co.; that Lee & Co. were bankers and brokers in the city of Baltimore, in the practice of dealing in money and negotiable paper on their own account, as well as agents for their employers; that the notes offered in evidence were sent to the defendant on the 8th of

October, 1860, endorsed in the manner shown; and one of them was paid on the 24th, and the other on the 29th day of the same month, and were on those days respectively, credited to Josiah Lee & Co. in their account current with the defendant; that at the time of the receipt and payment of the notes, neither the witness nor the defendant had any knowledge that they were not the property of Lee & Co.; and the first notice of the claim of the plaintiffs was derived from the letters referred to, that on the day the first of the notes was paid, Lee & Co. were indebted to defendant in the sum of $917.39; and on the 29th of October, 1860, after crediting both notes, Lee & Co. remained indebted in the sum of $741.62, and are now in debt to the defendant in the sum of $1,136; that a running account had been kept in the defendant's books with Lee & Co., since 1857, and the course of dealing had been that the defendant sent to Lee & Co. checks and negotiable paper for collection, and sometimes money, and Lee & Co. sent to the defendant all the paper which they had for collection in Carroll county; that the balances were not drawn on either side, but were from time to time allowed to remain, and adjusted by means of the collections and remittances; and that Lee & Co. from time to time also redeemed some of the defendant's circulation, and sent it up to the defendant, when they would be credited in the account, there being but one single promiscuous running account kept between them.

The defendant was in the habit of treating Lee & Co. as the owners of all paper endorsed to them (Lee & Co.) in the manner in which the notes in question were endorsed, and the balances were allowed to remain with Lee & Co., to be reduced or settled out of paper by them transmitted, and to be transmitted in the course of business, to the defendant; that the balances were generally in favor of the defendant, sometimes $5,000 or more, but sometimes they were in favor of Lee & Co.; that witness desired generally to have a balance in Lee & Co's hands, for the exigencies of the defend-

Miller, *et al. vs.* Farmers and Mechanics' Bank of Carroll Co.

ant's business, especially for the redemption of the defendant's currency in the city, but he had no fixed amount of balance, but it fluctuated, and was allowed to fluctuate, in accordance with the transactions between the parties.

The plaintiffs then asked the witness, on cross-examination, what was the main object of his desiring a balance with Lee & Co.? The witness said, "for the redemption of the defendant's currency."

The plaintiffs then asked the witness whether, if defendant had not received the two notes offered in evidence, he would, in view of the large transactions between the defendant and Lee & Co., have made any change in the account, or whether he would any the less have allowed the balance to stand? The witness answered that he did not believe he would have made any change, or ceased to allow the balance to stand, had the particular notes not been received.

The defendant then proved by the same witness that the balance was suffered to remain with Lee & Co., as well to pay for collections made by the defendant for them, as for the redemption of currency, and no distinction was made as to how much was intended for one purpose, and how much for another.

It was admitted that Lee & Co. failed about 2 o'clock, on October 30th, 1860.

The plaintiff offered four prayers, of which the first and fourth were refused — the Court being divided — and the second and third were granted.

The verdict was for the defendant, and the plaintiffs appealed.

The cause was argued before STEWART, BRENT, GRASON, ALVEY and ROBINSON, J.

*Wm. M. Merrick,* for the appellants:

The refusal of the two prayers was erroneous within the principles so clearly enunciated by the Supreme Court of the

United States in the case of *The Bank of the Metropolis vs. The New England Bank,* 1 *Howard,* 234, *and* 6 *Howard,* 212; and *Wilson & Co. vs. Smith,* 3 *Howard,* 763, 770, 771; and which have been sanctioned by this Court in *Cecil Bank vs. Farmers' Bank of Maryland,* 22 *Md.,* 154, 156, and also in New York, in *McBride vs. Bank of Salem,* 25 *Bar.,* 658 ; and *Hoffman, and others, vs. Miller, et al., Am. Law Reg., N. S.,* 676.

The proof showed that between the receipt of the moneys due on those notes and the insolvency of Lee & Co., there was no new credit of any sort given to them by the defendant, and as no new responsibility was incurred on the faith of those bills, and the transactions between the parties remained the same in all respects, as if those notes had not been transmitted, the Court erred in refusing to submit that precise question of fact, embraced by the fourth prayer, to the jury. *Wilson vs. Smith,* 3 *Howard,* 763.

The rule of law follows the fact in this whole class of cases. If the defendant be a *general creditor* of the insolvent, he cannot retain the property of a third party to satisfy his demand. He can only do so when he has given a *special credit, by reason* of the paper of the third party held by the insolvent. The law, if the fact of special credit be proved, attaches the legal consequence; not by reason of anything distinctively appertaining to commercial paper, but upon the general equity that where one of two innocent parties must suffer, the loss must fall upon him who, by his own negligence, has caused the other to put his own property in peril. In every case it must appear from the finding by a jury that credit, faith and trust were reposed, and consequent loss was occasioned by the act of the plaintiff. 25 *Barbour,* 658.

*William A. Fisher,* for the appellee :

The vice of both prayers is that they require a particular intent on the part of the defendant to give some special credit, or to conduct some special dealing on the faith of these very

notes, segregated from others, while the law looks only to a general intent, which will cover all paper transmitted in the course of the business, and is gratified by a credit given, based merely upon the expectation of paper to be afterwards transmitted in the usual course of business. *Bank of Metropolis vs. New England Bank,* 1 *Howard,* 234, *and* 6 *Howard,* 212; *Cecil Bank vs. Farmers' Bank of Maryland,* 22 *Md.,* 148; *Bosanquet vs. Dudman,* 1 *Starkie,* 1; *Cecil Bank vs. Heald, et al.,* 25 *Md.,* 562.

It being intended between Lee & Co. and the defendant that the proceeds of the notes should be applied towards the payment of any moneys due the defendant by Lee & Co., they being in debt to the defendant when the notes matured, to more than the amount thereof, and the application of the money having been actually made by the defendant before any notice that Lee & Co. were not the owners of the notes, the title of the ·defendant to the money became perfect on the days of payment, (27th and 29th October,) even if it had not, in point of fact, given any credit whatever to the notes before the payment thereof. *Swift vs. Tyson,* 16 *Peters,* 1; *Goodman vs. Simonds,* 20 *Howard,* 364; *Cecil Bank vs. Heald, et al.,* 25 *Md.,* 562; *Bosanquet vs. Dudman,* 1 *Starkie,* 1.

ALVEY, J., delivered the opinion of the Court.

As between the plaintiffs and Josiah Lee & Co., there could be no question or difficulty in regard to the right of the former, to the proceeds of the two promissory notes collected by the defendant; for it is expressly admitted that the notes were the property of the plaintiffs, and were endorsed by them, without value, to Lee & Co., simply for collection. But as between the plaintiffs and the defendant, a different question arises, and one that depends upon the nature and character of the dealings and transactions between the defendant and Lee & Co.; the principle being that whenever a banker or broker has advanced money to his customer, he has a lien on all the securities in his hands for the amount of

his general balance, unless such securities are held under some special agreement.

The endorsements of the notes by the plaintiffs to Lee & Co. were unqualified; and the possession by the latter of this negotiable paper, with such endorsements thereon, imported property in the holder; and, without notice to the contrary, the defendant had a perfect right to treat Lee & Co. as the *bona fide* owners of the notes, and were not bound to make inquiry as to whether they held them as agents or otherwise.

The notes were each drawn at six months, and matured and became payable—the first on the 27th, and the second on the 29th, of October, 1860. They were transmitted by Lee & Co., who were bankers and brokers, in the city of Baltimore, to the defendant, at Westminster, in Carroll county, on the 8th of October, 1860, specially endorsed to the latter, for collection. The notes were paid by the makers to the defendant at maturity, and the proceeds were immediately thereupon placed to the credit of Lee & Co., in an account current, which had been running between the defendant and Lee & Co. for several years. At the time of such payment, and credit in account, the defendant had no knowledge that the notes were not, in fact, the property of its correspondent, Lee & Co.; and the first knowledge received by the defendant to the contrary was communicated to it by Lee & Co., through letters dated the 15th of November, 1860, directing the notes or the proceeds thereof, if paid, to be delivered to the plaintiffs. Lee & Co. failed, and closed their house on the 30th of October, 1860, some fifteen days before knowledge came to the defendant that the notes belonged to the plaintiffs, and not to Lee & Co., according to their *prima facie* import. The balance on account against Lee & Co., and in favor of the defendant, was at the time of such failure, considerably more than the amount of the notes; and the balance still due the defendant on that account is $1,136.62, with interest.

It was in evidence that the course of dealing between the defendant and Lee & Co., had been that the former sent to

the latter checks and negotiable paper for collection, and sometimes money; and that Lee & Co. sent to the defendant all the paper which they had for collection in Carroll county. That the balances in account were not drawn for on either side, but were from time to time allowed to remain, to be adjusted by means of collections and remittances. That Lee & Co., from time to time, redeemed some of defendant's circulation, and sent it to the latter when it was credited in the account, there being but one promiscuous account kept between the parties. That after the receipt of the notes for collection, there were amounts larger than the aggregate sum received on the notes, charged in the account against Lee & Co., and which form a part of the debits upon which the balance was ascertained to be still due and owing to the defendant.

Upon this state of the case the plaintiffs, by their first prayer, which was refused by a divided Court, prayed that the jury be instructed that if they should find that the plaintiffs were the owners of the notes, and that they endorsed them in blank to Lee & Co., for collection, without value, and that the notes were specially endorsed by Lee & Co. to the defendant for collection, and were paid at maturity to the defendant, then the plaintiffs were entitled to recover, unless it should be further found that the defendant, after receipt of the notes, gave some new credit, or extended some existing credit, or made some new advances to Lee & Co., upon the faith of the notes. And by their fourth prayer, which was also refused by a divided Court, the plaintiffs asked that the jury be instructed that if it was found upon the whole evidence in the case, that the defendant incurred no new responsibility on the faith of the notes to Lee & Co., and its transactions with them remained the same in all respects at the time of their insolvency, as they would have been, if the notes had not been transmitted to the defendant for collection, then the plaintiffs would be entitled to recover. These prayers make the only questions before us. Were they properly refused by the Court below?

The right of the plaintiffs to maintain the action against the defendant, we think, is clear. The plaintiffs had constituted Lee & Co. their agents for the collection of the notes in question; and although Lee & Co. appeared, from the character of the endorsements on the paper, to be the real owners thereof, and the defendant had no notice to the contrary, and the money received on the notes was placed to the credit of Lee & Co. by the defendant, still the rule is well established, "that whenever by express agreement between the parties, a sub-agent is to be employed by the agent to receive money for the principal, or where an authority to do so may fairly be implied from the usual course of trade, or the nature of the transaction, the principal may treat the sub-agent as his agent, and when he has received the money, may recover it in an action for money had and received." *Wilson vs. Smith,* 3 *How.* 763.

We do not understand the application of this rule to be controverted; but it is contended, on the part of the defendant, that by the course of dealing between Lee & Co. and the defendant, the latter has the right to retain the proceeds of the notes in its hands, to be applied in part extinguishment of the general balance still remaining due on account from Lee & Co. And whether the defendant has the right so to retain the money received on the notes, depends upon a question of fact, and that is, was credit really given to Lee & Co. on the faith of these notes, endorsed to the defendant, before the receipt of knowledge that they belonged to the plaintiffs? If such credit was in fact given, it can make no manner of difference whether it was in the form of advances of money, or balances on account of mutual dealings between the parties, suffered to remain undrawn for. In case the credit was extended in either form, the right of the defendant is clear, and the plaintiff must fail of recovery. For by placing in the hands of Lee & Co. the notes so endorsed as to make them *prima facie* their property, the plaintiffs enabled the defendant, and all others, without notice, to deal with the holders as

Miller, *et al. vs.* Farmers and Mechanics' Bank of Carroll Co.

if they were the real owners. And if loss is to be sustained, it is but fair that the plaintiffs, by whose misplaced confidence it has been occasioned, should bear it, rather than the defendant, which has been guilty of no fault, but was induced to give the credit by the manner in which the plaintiffs placed their negotiable securities in the possession of their agents.

But, while such is the right of the defendant, if it has in fact been induced to extend a credit on the faith of the notes, by the act of the plaintiffs, yet, if no such credit was in fact given to Lee & Co. by it, or if given, subsequent indemnity has been obtained in any way for any loss that may have been occasioned thereby, then, it is clear, the plaintiffs would be entitled to recover the amount of the notes, as so much money had and received by the defendant to their use. Unless some credit was given, or some risk or responsibility incurred upon the faith of the notes, there would be no justice in allowing the defendant to retain the money, simply because it had passed the amount to the credit of Lee & Co., and they still owe a balance on account. The two rejected prayers of the plaintiffs, in our opinion, fairly and fully presented the law of the case, and we think the Court below was in error in not granting them. The legal propositions embraced in them are fully sustained by the cases of *Bank of the Metropolis vs. New England Bank,* 1 *How.* 234; *same case in* 6 *How.,* 212; *Wilson vs. Smith,* 3 *How.,* 763; and *Cecil Bank vs. Farmers' Bank of Maryland,* 22 *Md.,* 148.

Because of the error in refusing to grant the first and fourth prayers of the plaintiffs, the judgment of the Court below must be reversed, and the cause remanded for a new trial.

*Judgment reversed and*
*procedendo awarded.*

(Decided 13th March, 1869.)