The First National Bank, etc., *v.* The First National Bank, etc.

———◆◆◆———

No. 5641.

THE FIRST NATIONAL BANK OF CROWN POINT, IND., *v.* THE FIRST NATIONAL BANK OF RICHMOND, IND.

BANKS.—*Collecting Agents.—Failure of Collecting Bank.—Right to Collect and Credit After Suspension.—Endorsement.—Insolvency.—Notice.*—A., a bank, holding a check drawn in its favor, endorsed it to B., a bank, "for collection for account of" A., and sent it by mail to B., with a letter from the cashier of A., stating, "I enclose for collection and cr., as stated below," (specifying other checks and drafts sent), which check was by B. placed upon its "collection register," where all such checks, etc., received for collection only, were entered, and treated by it as the property of the party remitting the same, and no credit given therefor until collected. The cashier of B. endorsed the check for collection, and transmitted it to C., a bank, with authority, by letter, to credit the former with the proceeds when collected. B., on the same day, failed, and was taken possession of by a bank examiner. Two days thereafter, C. received the check, and, by its cashier, presented the check, received payment thereof, and credited the amount on its books to B., which was, at the time, on account of previous dealings, largely indebted to C. Before the cashier of C. collected the check, he had notice, by newspaper report, of the failure of B., but did not notify the drawee, who had no notice of such failure. Shortly afterward, the bank examiner, who had in his custody the books of B., without the knowledge or consent of A., credited A. and charged C. with the amount of the check on the books of B., the latter bank being, at the time the check was received, largely indebted to A. Action by A. against C., to recover the money collected on the check.

*Held*, that the plaintiff was entitled to recover.

VOL. 76.—36

The First National Bank, etc., *v.* The First National Bank, etc.

*Held,* also, that the endorsement of the check to B. by A. did not vest the title to it in B., nor give it any right to the proceeds; and that the letter accompanying it meant simply that B. should collect the money for A. and place it to its credit, and not that B. should treat the check as its own, or credit A. therewith before collection, and that B. received the check merely as the agent of A. for collection, with authority to credit A. when collected.

*Held,* also, that the transaction did not make B. the debtor of A. before the check was collected, nor did it deprive the latter of its right to the check or its proceeds before collection by B.

*Held,* also, that C. must be regarded as the agent of B. in making the collection, and being fully notified, by the endorsement on the check, that B. was not the owner of it, nor entitled to its proceeds, C. had no right to credit the amount thereof to B. upon its indebtedness to C.

*Held,* also, that the newspaper notice of the failure of B. was sufficient to require C. to regulate its action with a view to the rights of A., as affected by such failure.

*Held,* also, that the directions in the letter of the cashier of A. to B., was an authority to mingle the fund with the general funds of the bank, when collected, whereby A. would have become the general creditor thereof, instead of being entitled to the general fund; but the insolvency and suspension of B. operated as a revocation of such authority, and, if it had the authority to collect at all after such suspension, A. was entitled to the specific fund, and C., being the agent of B., had no more power or right to the specific fund than its principal.

*Held,* also, that what was done after the suspension of B., by the direction of the bank examiner, without the knowledge or consent of A., could not injuriously affect its rights.

*Held,* also, that the fact that C. had credited the amount collected on its debt against B., can not discharge it from liability.

PRINCIPAL AND AGENT.—*Bankruptcy of Agent.*—*Revocation.*—The bankruptcy or insolvency of an agent operates as a revocation of his authority; and authority to a bank to place a collection to a customer's credit when collected, must be considered as revoked by its suspension and failure.

PARTIES.—*Right to Sue.*—Where one has money in his hands, which rightfully belongs to another, the latter may sue for and recover it.

PRACTICE.—*Rehearing.*—*Brief.*—*Supreme Court.*—The granting of a rehearing puts the case in the same condition as if it had not been submitted, and where, on the second submission of a cause, the brief of appellant was on file, the cause will not be dismissed for failure to file a brief within sixty days after original submission.

From the Wayne Circuit Court.

*J. T. Elliott, C. H. Burchenal, J. H. Mellett, E. H. Bundy, J. T. Dye* and *A. C. Harris,* for appellant.

*J. P. Siddall, W. D. Foulke* and *J. S. Rupe,* for appellee.

WORDEN, J.—Action by the appellant against the appellee. Issue; trial by the court; finding and judgment for the defendant, a new trial having been refused.

The pleadings need not be noticed, as the whole case comes before us on the evidence. The following are the facts in the case, as shown by the evidence: The appellant is a national bank, doing business at Crown Point, Indiana. The appellee is a similar institution, doing business at Richmond, Indiana. On and prior to January 18th, 1875, the Cook County National Bank was a similar institution, doing business at Chicago, Illinois. There had been dealings between the appellant and said Cook County Bank, commencing in September, 1874, and continuing up to January 18th, 1875, on which last day there was a balance standing in favor of appellant on the books of said bank of $13,-971.81. On January 16th, 1875, the appellant owned a check for $5,000, drawn by Wiggins & Cheesman, on the Richmond National Bank, Richmond, Indiana, payable to the order of A. E. Bundy, appellant's cashier; and on said day said cashier endorsed said check as follows: "Pay A. West, Cashier, for collection for account of First National Bank, Crown Point. A. E. Bundy, Cashier." (Said A. West being cashier of Cook County Bank.) Said check, so indorsed, was on said day, together with four other checks and drafts, owned by appellant, sent by mail to the Cook County Bank, enclosed in a letter, as follows:

"FIRST NATIONAL BANK,

"CROWN POINT, IND., January 16th, 1875.

"A. West, Esq., Cashier: Dear Sir—I enclose for collection and Cr. as stated below. Yours respectfully,

"A. E. BUNDY, Cashier.

The First National Bank, etc., *v.* The First National Bank, etc.

"1st Pittsburgh, No. 923, on 3 Nat. N. Y., $  336 ·67
"Wiggins & Cheesman, on Richmond Nat.
 Bank, fr., - - - - - - - - - - 5,000 00
"Jacobs & Snyder, No. —, Proctor, Kean &
 Co., - - - - - - - - - - - -    8 64
"Merchants' Nat., Chicago, No. 58,327, Mer-
 chants' Nat., N. Y., - - - - - -   32 75
"A. Gregory, on Gregory, Cooley & Co., Chi-
 cago, - - - - - - - - - - - -  500 00
                                           ―――――――
                                           "$5,878 06"

Said other drafts and checks, amounting in the aggregate: to $878.06, were endorsed by said Bundy, cashier, to A. West, cashier of Cook County National Bank. Said letter and. enclosures were received by the Cook County Bank on January 18th, 1875. At that time said bank kept a book. containing the individual accounts between the bank and its, customers, in which customers were credited with deposits, payments, etc., and were charged with all drafts, checks or payments made to them. Said bank also kept another book, called a "collection register," in which was entered only drafts, notes, bills and checks which were received and taken for collection only, and which were payable at distant points, and for which credit was not to be given to the party remit- ting the same until the same were actually collected; and all such drafts, notes, bills and checks entered on such regis- ter were regarded and treated by said bank as the property of the party remitting the same, the Cook County Bank only acting as agent for the owner for collection. On receiving the said letter and enclosures from appellant, the Cook County Bank at once credited the said other checks and drafts, amounting to $878.06, on the appellant's account on said first named book. But the said $5,000 check was en- tered only on said "collection register," and no credit there- for was entered on appellant's account. And said Cook

County Bank did not purchase said check of appellant, or make any advancement in any form whatever to it on account thereof, but simply received the same for collection as agent of appellant. On said 18th day of January, about the hour of 3 P. M., said bank endorsed said check as follows: "Pay J. F. Reeves, Cas., or order, for collection for Cook Co. Nat. Bank, of Chicago. A. West, Cash.," and forwarded the same by mail to the appellee, enclosed in a letter, as follows:

"COOK COUNTY NATIONAL BANK, OF CHICAGO,
CHICAGO, ILL., January 18th, 1875.
*J. F. Reeves, Esq., Cas., Richmond, Ind.:*

"Dear Sir :—Herewith we enclose for collection and credit bills as stated below. Respectfully, yours,

"A. WEST, Cashier.
"Richmond Nat'l, $5,000."

About the same hour (3 P. M.) of same day, the Cook County Bank, being largely insolvent, closed its doors, and never thereafter transacted any banking business ; and, on the following morning, possession of said bank, with all its books and assets, was taken by A. Spink, United States Bank Examiner for the Chicago District, who held the same continuously up to February 8th, 1875, when the same passed into the hands of a receiver, duly appointed under the United States National Banking laws ; and from and after said January 18th, 1875, neither the bank nor any of its officers had any control of the books or assets of said bank ; and, up to the time of the trial of this cause, the affairs of said bank were in process of liquidation by such receiver, according to the United States laws, the probability being that it would not be able to pay more than twenty-five cents on the dollar of its indebtedness. The said check, so endorsed and forwarded by said Cook County Bank, was received by the appellee on the morning of January 20th, 1875 ; and, at about the hour of 10 A. M. of said day, appellee's cash-

ier presented it at the Richmond National Bank, and drew and received thereon the sum of $5,000. Within an hour or so after paying said check, the cashier of the Richmond National Bank received a telegram from appellant, directing him to refuse payment of said check, which message he at once presented to appellee. Before the presentment and collection of the check, appellee's cashier and teller had notice, through newspaper report, of the failure and suspension of the Cook County Bank, but said cashier, when he presented the check, did not notify the Richmond National Bank thereof, nor did the officers of said latter bank have any notice of such failure before paying the check. After collecting the check, appellee credited the amount on its books to the Cook County Bank, said bank then already being indebted to appellee $10,450.49, on account of previous dealings, no part of which indebtedness was incurred on the faith or credit of said check, and no consideration was at any time given by appellee for said check, except the giving of said credit on its books, and no communication had passed between appellee and the Cook County Bank in relation to said check, except the letter above set out. At the time of receipt of said check by the Cook County Bank, it was not credited to appellant, and, on sending it to appellee, it was not charged to the latter on the books of said bank; but, on January 23d 1875, the appellant was credited and appellee charged with the $5,000 on such books, such entries, however, being made without the knowledge or assent of appellant, such entries being made only by the order and direction of said bank examiner, who then had such books in his custody. On July 19th, 1875, appellant again, by her attorneys, demanded of appellee the proceeds of said check, with the proper interest thereon, payment of which, or any part thereof, was refused, and on the following day appellant commenced this action for the recovery of said money.

We are of opinion, that on these facts the plaintiff was entitled to recover, and, therefore, that a new trial should have been granted.

The plaintiff held a check, drawn in its favor by Wiggins. & Cheesman for $5,000, on the Richmond National Bank. This check the plaintiff endorsed to the Cook County Bank "for collection for account of First National Bank of Crown Point." This endorsement authorized the Cook County Bank to collect the check for account of the plaintiff.

In the letter transmitting the check to the Cook County Bank, the plaintiff's cashier said: "I enclose for collection and credit as stated below." The check was not transmitted to the Cook County Bank to be collected and applied to the payment of any indebtedness of the plaintiff to that bank. On the contrary, the plaintiff was at the time the creditor of that bank in the sum of nearly fourteen thousand dollars. The direction in the letter meant simply to collect the money for the plaintiff, and, instead of remitting the funds, place them to the plaintiff's credit.

The endorsement of the check did not vest the title to it in the Cook County Bank, nor give it any right to the proceeds. In the case of Sweeny v. Easter, 1 Wal. 166, Mr. Justice MILLER, in pronouncing the opinion of the court, said, speaking of a similar endorsement: "The words 'for collection' evidently had a meaning. That meaning was intended to limit the effect which would have been given to the endorsement without them, and warned the party that, contrary to the purpose of a general or blank endorsement, this was not intended to transfer the ownership of the note or its proceeds."

The letter of the plaintiff transmitting the check to the Cook County Bank did not contemplate that the latter bank should treat the check as its own and credit the plaintiff with the amount of it, before collection. If such were the case, it would seem to follow that the plaintiff would lose all

remedy upon the check, and be compelled to look solely to the Cook County Bank as its debtor. On the other hand, if the acceptance of the check by the Cook County Bank, for the purpose and upon the terms specified in the letter, made it the debtor of the plaintiff for the amount before collection, it was compelled to take the risk of failure to collect.

It is clear that the transaction between the plaintiff and the Cook County Bank did not make the latter bank the debtor of the plaintiff before collection, nor did it deprive the plaintiff of its right to the check or its proceeds before collection by the Cook County Bank. *Scott* v. *The Ocean Bank, etc.*, 23 N. Y. 289; *Levi* v. *National Bank, etc.*, 5 Dillon, 104; *Johnson* v. *Barney*, 1 Iowa, 531. Nor, indeed, did the Cook County Bank give the plaintiff credit for the check. On the contrary, it placed it in its "collection register," as a claim received for collection only. What was done after the bank ceased to do business, by the direction of the bank examiner, without the knowledge or consent of the plaintiff, can not injuriously affect its rights in the premises. The Cook County Bank, then, received the check merely as the agent of the plaintiff for collection, with authority to credit the plaintiff with the proceeds when collected. The Cook County Bank transmitted the check to the defendant for collection, with authority to credit the former with the proceeds when collected. This would perhaps, in the absence of controlling circumstances, have conferred the right on the defendant to credit the amount, when collected, to the Cook County Bank, in liquidation *pro tanto* of the debt which that bank owed the defendant.

The defendant must be regarded as the agent of the Cook County Bank in making the collection; and, when the defendant collected the money, it would seem that the Cook County Bank should be deemed as having collected it, and therefore authorized to appropriate the money to the payment of the defendant's debt, or otherwise as it might

choose, and credit the plaintiff with the amount. But the defendant was fully notified, by the endorsement on the check, that the Cook County Bank was not the owner of it, nor entitled to its proceeds; that that bank was only the agent of the plaintiff for the collection of the check for the account of the plaintiff.

On the 18th of January, 1875, the Cook County Bank became insolvent, closed its doors, and never thereafter transacted any banking business. On the following morning the bank examiner took possession of its books and assets, which finally passed into the hands of a receiver.

On the 20th of January, 1875, the defendant received the check and drew the money upon it, having notice at the time of the plaintiff's right to the check and its proceeds, and of the condition of the Cook County Bank. The parties filed an agreement as to some of the facts, from which we copy the following paragraph:

"On the same morning (January 20th, 1875), and before the presentment and collection of said check, the defendant's cashier and teller had notice, through newspaper report, of the failure and suspension of the said Cook County National Bank."

This notice we regard as amply sufficient to put the defendant upon its guard, and to require it to regulate its action with a view to the rights of the plaintiff, as affected by the failure of the Cook County Bank, if, indeed, it would not be obliged to take notice of the failure of its principal, so far as that failure affected those rights. The Cook County Bank had a power to collect, not coupled with an interest; for, if it had collected the money, the plaintiff might have withdrawn the funds the next moment, and the defendant, being the mere agent of that bank for collection, had no greater right to the paper, as against the plaintiff, than its principal.

The direction in the letter of the plaintiff to the Cook

County Bank, to credit the money to the plaintiff, when collected, was an authority to mingle the funds with the general funds of the bank, whereby the plaintiff would become the general creditor of the bank instead of being entitled to the specific fund. If the plaintiff had been the debtor of the Cook County Bank, perhaps the power would have been coupled with such an interest as to make it irrevocable. See cases cited in note *d*, Dunlap's Paley's Agency, 4th ed., top p. 185.

Now, we think, on principle and authority, that the insolvency and suspension of the Cook County Bank operated as a revocation of the authority contained in the plaintiff's letter, to mingle the fund with the general funds of the bank, so as to make the plaintiff the general creditor of the bank for the amount, instead of being entitled to the specific fund. It may be that the power to collect at all was revoked, but it is unnecessary to express any opinion upon that point. If, after the insolvency and suspension of the Cook County Bank, it had the power, by reason of the paper being in its hands, to make the collection, the plaintiff was entitled to the specific fund.

The defendant, as the collecting agent of the Cook County Bank, had no more power or right to the specific fund than its principal had. Story Agency, sec. 469.

It is said by the author last above quoted, at sec. 486 of the same work, that bankruptcy, "it is said, will amount to a revocation of his" (the agent's) "authority to receive money from the purchaser" (of goods), "or from other persons, upon the account of his principal. By the foreign law, also, the bankruptcy of the agent operates as a revocation of his authority, for the satisfactory reason, that it is presumed that the confidence of the principal in him is thereby destroyed." The reason above given is forcible when applied to a bank employed as a collecting agent, with power to enter a general credit for the fund when collected, and becoming in-

solvent and suspending after the employment. See, also, Ewell's Evans Agency, top p. 122.

In the case of *Audenried* v. *Betteley*, 8 Allen, 302, it was held that the insolvency of an agent terminated his agency.

The authority of the Cook County Bank to credit the plaintiff with the proceeds of the check, when collected, thus making the fund its own, instead of remitting it to the plaintiff, ought to be considered as revoked by its suspension and failure. If revoked, the plaintiff is entitled to the fund. If not revoked, the plaintiff is entitled to only its share in the assets of that bank in common with other creditors; and that bank will be paying the defendant $5,000 with money derived from the plaintiff without consideration. The view which we take of the question accords with, and is supported by, the case of *Levi* v. *National Bank*, etc., *supra*, where a similar question in principle was involved. It follows that the defendant has collected, and has in its hands, money which belongs to the plaintiff. The fact that the defendant has credited the amount on its debt against the Cook County Bank can not discharge it from liability to the plaintiff. The action will lie to recover the money.

No objection can be successfully made on the ground of want of privity. There is some discrepancy in the decisions as to whether the collecting agent, or the sub-agent, should be sued by the holder of paper, for the failure of the sub-agent to perform some duty, or for some negligence, whereby the debt is lost. See 1 Daniel Neg. Inst., sec. 344 and notes. But the rule scarcely admits of an exception, that, where one has in his hands money which rightfully belongs to another, the latter may sue for and recover it. 2 Chitty Contracts, 11th Am. ed., p. 898, and note *n*; *Hall* v. *Marston*, 17 Mass. 575.

It is said, in Morse on Banks and Banking, 2d ed., p. 418, that, "If commercial paper is deposited in a bank for collection, and is by that bank transmitted to any other

bank or agent, or through any series of banks or agents, till it reaches the possession of the last bank or agent, whose duty it becomes actually to make the collection, the bank or agent actually making the collection can be held directly by the owner of the paper to pay the amount, less charges and expenses, to him." See, also, the case of *Comstock* v. *Hier*, 73 N. Y. 269.

The appellant claims that, upon the reversal of the judgment, the court below should be instructed to render judgment in its favor. The record, however, is not in a condition that permits this to be done. The finding below was a general one for the defendant. The case was not submitted on an agreed statement of the facts. Certain facts were agreed upon, but the parties reserved the right in the agreement to introduce other evidence not inconsistent with the facts agreed upon; and other evidence was introduced.

The appellee has moved to dismiss the appeal on the ground that the appellant did not file its brief within sixty days after the original submission of the cause. The cause was originally submitted, and decided, affirming the judgment. A rehearing was afterward granted, and on the second submission the appellant's brief was on file. The granting of the rehearing put the case in the same condition as if it had not been submitted. There is no ground for the motion to dismiss, and it must be overruled.

The judgment below is reversed, with costs, and the cause remanded for a new trial.