ALFRED BURY ET AL., Respondents, *v.* JOHN G. WOODS, Appellant.

### March 30, 1885.

1. BANKERS—USAGES OF—MUTUAL DEALINGS—RIGHTS OF REAL OWNER AGAINST, WHEN NO ADVANCES MADE ON FAITH OF PAPER.—Where there have been mutual dealings beween bankers, on a mutual account current between them, in which they mutually credit each other with the proceeds of all paper remitted for collection, and accounts and balances are settled on this understanding ; and *where upon the face* of the paper transmitted it always appears to be the property of the respective banks, and remitted by each on its own account, and the balance of account is

suffered to remain unsettled *on the faith of such understanding*, and a credit is given upon the paper thus remitted, there will be a lien for the general balance of accounts and a right to retain the securities so received, or the amounts collected and on hand, as a credit upon the general balance in settlement of such advances. But where there is no mutual arrangement whereby it is understood that such remittances of paper are to go to the credit of the previous account, and no advance is made, nor *any credit given on the basis* of the particular bill, or upon the faith of such course of dealing, or where the special circumstances are inconsistent with the hypothesis of such mutual understanding ; the owner of the note remitted through his banker for collection, may sue for and recover the amount of said note, although the collecting banker may have carried it to the credit of his correspondent in mutual account kept between them. Following *Milliken* v. *Shapleigh*, 36 Mo. 598.

2. INSTRUCTIONS — REFUSAL OF, WHEN JUSTIFIED. — Although an instruction may contain a correct principle of law, stated abstractly, yet if it is not supported by the evidence actually produced at the trial, and is not fairly applicable to such evidence so produced, it is the duty of the trial court to refuse it.

APPEAL from Jackson Circuit Court, HON TURNER A. GILL, Judge.

*Affirmed.*

Statement of case by the court.

This is a suit for money alleged to have been collected and received by defendant of James Mathews "to and for the use of these plaintiffs."

Plaintiffs were a firm doing business at Kansas City, Mo., under the style of the Kansas City Agricultural Implement Co. March 11, 1878, said Mathews executed his two negotiable promissory notes to said firm, under said firm name, one due June 1, 1878, for $313.65, and the other (the one in controversy) for $162.30 due August 1, 1878. At and prior to said dates the defendant was a banker at Wellington, Kansas. The Mastin Bank at Kansas City sent defendant all its collections in the county in which he was located. The maker of these notes lived there.

The plaintiffs did business with the Mastin Bank, and had at the time of its failure, about August 3, 1878, over

$1000 to their credit. Defendant also at same time had about the same sum to his credit in said bank.

About July 22, 1878, plaintiffs left with the Mastin Bank for collection the said note of $162.30. The note was endorsed in blank by plaintiffs, and was delivered to the Mastin Bank solely for the purpose of collection, and the plaintiffs got no benefit therefrom, and received no credit in said bank on account thereof. Among other witnesses, the defendant was a witness for himself, and testified: "I have been in the banking business at Wellington, Kansas, since the fall of 1878; I commenced to do business with the Mastin Bank in February, 1878. At the time the Mastin Bank failed it owed me between nine and ten hundred dollars, exclusive of the note in question, which had been credited. It was necessary that I should keep an account with a bank at Kansas City in order to furnish exchange to the business men at Wellington. I had no St. Louis account, and all the St. Louis exchange was sent to the Mastin Bank to my credit. In order to draw on the Mastin Bank I deposited money with them, and exchange from time to time. I was the correspondent for the Mastin Bank at Wellington. All drafts or notes payable in Sumner county, Kansas, were sent to me endorsed by the Mastin Bank for collection and credit. When I made a collection for the Mastin Bank, I gave it credit for same and notified them. If a collection was made before ten o'clock A. M., I gave notice to said bank of such collection; if after that time, notice went over till next day. When I collected the note in controversy, I gave the Mastin Bank credit for it. I collected the note of $313.65, filed as exhibit "A" with the deposition of James Mathews filed in this case. I gave the Mastin Bank credit with the proceeds of the collection of that note. The note in controversy was endorsed in the same manner as the note last referred to, and was collected and credited to the Mastin Bank." Cross-examination. "I was not able to keep my account up at the Mastin Bank by exchange and collections alone, as I remember, and I sent them

currency for that purpose. I kept this account at the Mastin Bank for my own accommodation, and for the convenience of serving my customers with exchange. * * * * * * During the entire course of my dealing with the Mastin Bank, the balance was always in my favor, that is, to my credit, unless it may have been for a day or so, once or twice. I always aimed to keep money to my credit there, and don't suppose they would have allowed it otherwise. * * * * * * * Q. Then, as this note in question was good, and endorsed for collection and credit of the Mastin Bank, you gave it credit, by the amount, on receiving the note? A. I did not. Q. Why did not you? A. I did not consider it business. Q. Do you think it business to send funds to meet a possible collection before it is made? A. No. Q. Why did you do so in this instance? A. As I stated, my funds were kept in the Mastin Bank to draw on, and meet collections, and this was one of the collections. Q. Then your sole purpose in keeping a balance to your credit in the Mastin Bank was to be able to draw and sell exchange thereon, and to draw against the same in payment of such collections as you should make for it? A. If I understand the question, it was."

* * * * * * * * * * *

· The court, for plaintiffs, declared the law to be: "If the court shall believe from the evidence that the plaintiffs being the payees of the note on Mathews, mentioned in the evidence, and the holders and owners thereof, on or about July 22, 1878, without consideration therefor, endorsed and delivered said note to the Mastin Bank, only for the purpose of collection thereof; that said The Mastin Bank endorsed and transmitted the same to defendant for collection, and that said defendant paid said The Mastin Bank nothing for said note or the endorsement thereof, then the court should find for the plaintiff,—unless it shall also further find and believe from the evidence that said defendant and said The Mastin bank had an agreement expressed or to be implied from their course of dealing; that said defend-

ant and said The Mastin Bank relied upon the reception of such collection to meet balance accruing in their favor respectively, and allowed such balance to accumulate and remain undrawn for with the understanding or expectation that such balances would be met and discharged by such collection, so to be received by such creditor. And if the court shall believe and find from the evidence that said defendant kept his account with, and a balance at said The Mastin Bank to his credit, for his own convenience, made and kept up in part by money sent and placed there by defendant upon and against which to draw exchange, then he is not entitled to claim the proceeds of such collection to pay the balance due him from said Mastin Bank.'' The defendant asked the two following declarations of law, which were refused by the trial court:

1. "The court declares the law to be that plaintiffs cannot recover if defendant received the note in controversy before the same was due, endorsed by the payee thereof, and that the same was received by defendant from the Mastin Bank for collection and account of said bank, providing the defendant made advance, from time to time upon such paper to said bank, and that said bank did at the time of its failure owe defendant a large sum of money after giving said bank credit for said collection."

2. "The court declares the law to be that under the pleadings and evidence, plaintiffs cannot recover."

The court, sitting as a jury, found for plaintiffs. The cause is here on appeal by defendant.

C. O. TICHENOR, for the appellant.

I. Although there may have been a verbal agreement between the Mastin Bank and plaintiffs limiting their endorsement, it was not binding on defendant, who had advanced money on the strength thereof, without notice, and in the ordinary course of business.—*Lewis* v. *Dunlap*, 72 Mo. 174.

II. Had there been no advancement, plaintiffs cannot recover, as the Mastin Bank got credit for the money paid by the maker of the note. This was in pursuance

of the agreement between said Mastin Bank and defendant, and was according to the ordinary course of business. The money collected belonged to defendant, and he became the debtor of the Mastin Bank to that amount. These facts were not disputed, hence the demurrer to the evidence should have been sustained.—*Ayres* v. *Farmers and Merchants Bank*, 79 Mo. 421 ; *Bullene* v. *Coates*, 79 Mo. 426 ; *First National Bank* v. *Gregg*, 79 Pa. St. 384.

R. O. Boggess, for the respondents.

I. The appellant was duly served by publication and was in default for not pleading in time, and a judgment by default was regularly rendered against him, March 11, 1880. He could not answer till that judgment was set aside.—*Gilstrap* y. *Felts*, 50 Mo. 429. All done subsequent to the judgment by default is in substance and in law merely an assessment of damages, Woods appearing as he had a right to do.    *    *    A judgment by default clearly establishes the right of plaintiffs to recover. The assessment of damages merely determined the amount to be recovered.—*Barclay* v. *Pickly*, 38 Mo. 146 ; *Robinson* v. *Lawson*, 26 Mo. 72 ; *Price* v. *Page*, 24 Mo. 67 ; *Froust* v. *Bruton*, 15 Mo. 619 ; Rev. Stat. (1879) sects. 3675 and 3676.

II. If the case was legally at issue, and in law tried as such there is no error. The instruction given for respondents covered the whole case. It is good law, and the two instructions asked by appellant were properly refused, because unnecessary and wrong.—*Milliken* v. *Shapleigh*, 36 Mo. 596, 600.

III. The case of *Ayres* v. *Farmers Bank* and of *Bullene* v. *Coates* (79 Mo. 421 and 426), are altogether different from this.    *    *    The point of both decisions was that the Mastin Bank got a good title, as purchaser, to the paper on receipt of it. There was no such agreement, express or implied, between the Mastin Bank and Woods as existed in the two cases in 79 Mo. 421 and 426.

IV. It is not true that there is no dispute about the facts. Woods did not produce the note at the trial, though he had it. He did not show the letter in which

he got it, which, of course, contained some instructions. He did not show the day when he got the note, nor the items of account between him and the Mastin Bank. He knew a great many facts which he did not disclose but carefully kept back. His testimony in chief certainly did not make out a case for him. * * The court was warranted in finding that he made no advance on this paper and had no right to hold the proceeds against the true owners.

V. The note bore a restrictive endorsement, which showed that plaintiffs were owners of the note and that the collection was to be for their account. This destroyed the negotiability of the note and operated as a mere authority to defendant to receive the proceeds for the use of the owner.—*Bank* v. *Valley Packing Co.*, 70 Mo. 643; s. c. 4 Mo. App. 210.

Opinion by HALL, J.

The errors complained of in this court are: 1st. That the court below should not have given plaintiffs' declaration of law. 2d. That the said court should have given the declarations of law asked by defendant.

I. Considered abstractly, plaintiffs' declaration of law is correct. And it is abundantly supported by the evidence so far as its terms favor plaintiffs.

That the defendant paid any present valuable consideration for the note in controversy it is not contended. Unless then, some credit was given, or some risk or responsibility was incurred upon the faith of the note by the defendant, there would be no justice in allowing him to retain the money simply because he had passed the amount to the credit of the Mastin Bank, and it still owes him a balance on account.—*Miller* v. *Farmers and Mechanics Bank of Carroll Co.*, 30 Md. 401.

It is certain that although plaintiffs so endorse the said note as to make the Mastin Bank, *prima facie*, absolute owner of the same, still plaintiffs can treat the defendant as their sub-agent, as to the collection of said note, unless misled by the character of said endorsement,

and upon the strength of it defendant has placed himself in a situation where it would subject him to loss or injury to treat him as such sub-agent. Now under the facts in evidence in this case, the question as to whether the defendant has been placed in such a situation; as to whether he has been misled by the said endorsement, as to whether he has given any credit on account of the said note as endorsed, has been fairly submitted to the jury by plaintiffs' declaration of law.

This case is not within the rule laid down in the cases of *Ayres* v. *Farmers and Merchants Bank* (79 Mo. 421), and *Bullene* v. *Coates* (79 Mo. 426). In this case there was no transfer of title to the note from the Mastin Bank to defendant. In this case the evidence does not show that the note was endorsed and deposited with defendant "for credit and not collection and credit when collected". —*Bullene* v. *Coates*, *supra*. But, on the contrary, the defendant himself testified in this case that the note was received by him for collection and credit when collected, and not before.

The rule to be applied to the facts of this case is laid down in the cases of *Bank of Metropolis* v. *New England Bank* (1 How. 234), where it is said: "If negotiable paper, not at maturity, be endorsed and delivered to another bank for collection, without notice that it does not belong to the former, the latter may retain the paper and its proceeds to satisfy a claim for a general balance against the formerf; if that balance has been allowed to arise and remain on the faith of receiving payment from such collection pursuant to a long usage between the two banks"; and *Wilson & Co.* v. *Smith* (3 How. 770), where it is said: "It appears from the statement that he (meaning defendant) made no advances and gave no new credit to St. John (in whose place in this case, the Mastin Bank stands) on account of this bill. He merely passed it to his credit in account. Now, if St. John had owed him nothing upon the principles we have already stated, the plaintiff would be entitled to recover his money, and we see no reason why he should be barred of his action because· St

John was debtor to the bank, since the case shows that he incurred no new responsibility upon the faith of this bill, and his transactions with St. John remained in all respects the same as they would have been if this bill had never been transmitted"; and *Bank of the Metropolis v. New England Bank* (6 How. 212), where this principle is enunciated: "And if the bank of the Metropolis had not notice that the Commonwealth bank was merely an agent, but regarded and treated it as the owner of the paper transmitted, yet the Bank of the Metropolis is not entitled to retain against the real owners unless credit was given to the Commonwealth Bank, or balances suffered to remain in its hands to be met by the negotiable paper transmitted in the usual course of the dealings between the two banks." This rule is also recognized by Judge Dillon, in the case of *Levi v. National Bank* (5 Dill. 107); and has been approved by the Supreme Court of Missouri, in *Milikin et al.* v. *Shapleigh et al.* (36 Mo. 599, 600.

It seems to us that to the facts of this case, this rule thus declared is applicable, and that in plaintiffs' declaration of law it has been fairly and correctly stated.

There is nothing improper in the final clause of this declaration, which says: "And if the court shall believe and find from the evidence that said defendant kept his account with and a balance at said Mastin Bank to his credit, for his own convenience, made and kept up in part by money sent and placed there by defendant, upon and against which to draw exchange, then he is not entitled to claim the proceeds of such collection to pay the balance due him from said Mastin Bank." Because if defendant did so keep said account and balance he could not have kept the same on the credit of collections sent and to be sent to him by the Mastin Bank.

It follows that in our opinion the court properly refused to give the declaration in the nature of a demurrer to the evidence asked by defendant.

II. As just said, the declaration of law given for plaintiffs fully stated the rule of law applicable to the facts of

this case. And we think that the circuit court correctly refused to give the first declaration of law asked by defendant for the reason that it was not supported by the evidence. The material part of that declaration, relieving the defendant of liability is, in the following words: "Providing the defendant made advances from time to time upon such paper to said bank."

Abstractly, this is certainly true. But the effect of the arrangement and general course of business between defendant and Mastin Bank had been fully explained in the plaintiffs' declaration of law; and it does not seem to us from a study of the evidence in this case, given by defendant himself, that it could have been reasonably inferred from said evidence that defendant had made at any time any advancement, or had given any credit especially upon the faith of the note in controversy.

The judgment of the circuit court is affirmed. All concur.