## In re ARMSTRONG.

### (*Circuit Court, S. D. Ohio, W. D.*)

BANKS AND BANKING—NOTES FOR COLLECTION—INSOLVENCY OF BANK.

The Winters National Bank sent to the Fidelity Bank a note of $2.000 for collection, and indorsed "Pay Fidelity National Bank, Cincinnati, O., or order, for collection for account of the Winters National Bank, Dayton, Ohio. J. C. Reber, cashier." The Fidelity Bank forwarded it to the Drovers' & Mechanics' Bank, which received payment thereof at maturity. Before the Fidelity Bank received notice and remittance of the $2,000, it became insolvent, and went into the hands of a receiver, who took the $2,000, and credited the Winters Bank therewith. *Held*, that the Fidelity Bank did not own the note, and the Winters Bank was entitled to the full $2,000, as against the Fidelity Bank's receiver.

Application by Receiver for instructions.

This is an application by David Armstrong, receiver of the Fidelity National Bank, for instructions as to his action in regard to $2,000 received in payment of a certain note.

*E. W. Kittredge* and *W. P. Burnet*, Dist. Atty., for receiver.

JACKSON, J. The petition of the receiver sets out the following state of facts, on which the instructions of the court are asked, viz.: On the eighteenth day of May, 1887, the Winters National Bank of Dayton, Ohio, being the holder and owner of a certain note for $2,000 made by L. H. Lee & Bro., of Baltimore, Maryland, dated March 17, 1887, payable three (3) months after date at the Third National Bank of Baltimore, to the order of Whitely, Fassler & Kelley, and by them indorsed to said Winters National Bank, forwarded the same to the Fidelity National Bank of Cincinnati for collection and credit, placing on the note the following special indorsement: "Pay Fidelity National Bank, Cincinnati, O., or order, *for collection for account of the Winters National Bank, Dayton, Ohio.* J. C. REBER, Cashier." The Fidelity National Bank forwarded the note to the Drovers' & Mechanics' National Bank of Baltimore for collection, and on the twentieth day of June, 1887, the day of its maturity, it was paid by the makers, and the amount thereof was on the same day credited on the books of the Drovers' & Mechanics' National Bank to the Fidelity National Bank. On the morning of June 21, 1887, before receiving any advice of the payment of said note, and before any credit was given on its books to the Winters National Bank for said note, or for the amount collected thereon by its correspondent,

the Fidelity National Bank was closed by officers of the treasury department as insolvent, and its assets placed in the hands of David Armstrong, as receiver. No charge was made of the amount of said note to the Drovers' & Mechanics' National Bank by the Fidelity National Bank, nor was any credit given to the Winters National Bank for the same, until after the Fidelity National Bank was in possession of the receiver. On the twentieth of June the Drovers' & Mechanics' National Bank, by letter, advised the Fidelity National Bank of the collection of the note, and for the credit given it for the amount; upon the receipt of this advice the receiver credited the Winters National Bank, and charged the Drovers' & Mechanics' National Bank with the amount on the books of the Fidelity National Bank, under or as of the date of June 20, 1887. The Winters National Bank did not anticipate payment of the note by drawing on the Fidelity National Bank for the whole or any portion of the amount thereof. The Winters National Bank had a credit balance with the Fidelity Bank, and, in the course of business, would not have drawn on the amount of said note until after being advised that said note had been paid. The Drovers' & Mechanics' National Bank's account with the Fidelity Bank shows a debit balance. The Winters National Bank and the Drovers' & Mechanics' National Bank both had reciprocal accounts with the Fidelity National Bank. The $2,000 collected as aforesaid having come into the possession of the receiver since his appointment, and since the doors of the Fidelity Bank were closed, is now demanded by the Winters National Bank, and the receiver "prays instructions from the court as to whether said amount belongs to the Winters National Bank or to himself as receiver."

Under the facts thus presented the $2,000 in question is clearly the property of the Winters National Bank, and cannot be rightfully retained by the receiver as part of the assets of the Fidelity National Bank. Under the special and restrictive indorsement which the Winters Bank placed upon the note when it was transmitted to the Fidelity Bank for collection and credit, viz., "Pay Fidelity National Bank, Cincinnati, Ohio, or order, for collection for account of the Winters National Bank, Dayton, Ohio," no title to the note or its proceeds passed or was transferred to the Fidelity Bank. Nor was any relation of creditor and debtor between the two banks created by the Fidelity Bank's reception of the note under the terms of the indorsement. Aside from the indorsement, the statement of facts submitted, and on which the court's instructions are asked, show no arrangement or understanding between the two banks that the note, so remitted for collection, was to be treated as cash. The relations between the two banks in respect to the note were simply that of principal and agent, under which the Fidelity Bank was authorized and directed to collect for account of the Winters Bank, with no right on the part of the latter to draw against it until actually collected and placed to its credit on the books of the Fidelity Bank. The transaction as disclosed in the petition, was in no sense equivalent to a discount of the note, whereby the Fidelity Bank acquired a title to the paper and its proceeds. The indorsement under which it was forwarded to the Fidel-

ity Bank is clearly inconsistent with any such idea; and if that indorsement was subject to explanation or variation by parol evidence, (which is not conceded,) the facts presented establish no such arrangement or understanding as would serve to vary the plain meaning and intention of the special indorsement which merely made the Fidelity Bank the agent of the Winters Bank to collect the note for account of the latter. By this restricted indorsement the Winters Bank gave notice to every one into whose hands the paper might come of its title to the note and its right to the proceeds. The case presents no question between the Winters Bank and the Drovers' & Mechanics' National Bank of Baltimore. The latter does not claim, and, under the special indorsement giving it notice of the Winters Bank's right to the note and its proceeds, could not assert any valid claim to the fund, no matter what may have been the course of its business with the Fidelity Bank, nor how its account stood with that bank when the collection was made. When, therefore, the note was collected, and the amount thereof was placed to the credit of the Fidelity Bank by the Drovers' & Mechanics' Bank, the money still belonged to the Winters Bank. The act of the collecting bank, exercising only a delegated agency, in placing the collection to the credit of the Fidelity Bank in no way effected the rights of the owner of the paper, for whose account, as shown by the indorsements, it was to be collected. That crediting of the collection to the Fidelity Bank by the Drovers' & Mechanics' Bank on June 20th, and its letter of advice of the fact meant, so far as the Winters National Bank is concerned, merely that the money was received *for* the Fidelity Bank's *principal*, and was subject to its order for account of *that* principal. It could have no other legal effect or significance, without assuming that the Drovers' & Mechanics' National Bank, under its delegated agency to collect "*for account*" of the Winters Bank, could, by the manner in which it might keep its account, change the relation which the Winters and the Fidelity Bank occupied towards each other. It is too clear for argument that no act of the Drovers' & Mechanics' Bank, in the face of such an indorsement as the note bore, could convert the relation of principal and agent which existed between the Winters Bank and the Fidelity Bank in respect to the note and its proceeds, into another and different relation of creditor and debtor. As against the Winters Bank, the credit which the Drovers' & Mechanics' Bank gave to the Fidelity for the amount of the collection, did not vest the latter with the legal and beneficial ownership of the funds represented thereby, nor did it have the effect of terminating the agency relation which the Fidelity Bank sustained towards the Winters Bank, for whose account the collection was to be made. The Winters Bank could, on the morning of June 21, 1887, have made a valid demand upon the Drovers' & Mechanics' Bank for the amount of the note so collected for its account. Before completing the collection by actually receiving the money from the Drovers' & Mechanics' Bank, or making counter-charges and credits by which the funds would be placed in the Fidelity Bank, subject to the right of the Winters Bank to draw against the same, the Fidelity Bank became insolvent,—suspended business,—and its doors

were closed. This suspension and failure terminated or revoked its agency and authority to proceed in the matter, and the receiver could not *thereafter* divest the Winters Bank of its right to the money collected for its account by the Drovers' & Mechanics' Bank, by making entries on the books of the Fidelity Bank, charging the Baltimore Bank and crediting the Winters Bank with the amount of the note so collected. These debit and credit entries made by the receiver cannot operate to vest the Fidelity Bank with title to or ownership of the money, nor in any way affect the rights of the Winters Bank. When the Fidelity Bank failed and suspended, and its agency to collect *for account* of the Winters Bank terminated, the note or the money collected thereon was still subject to the control of the Winters Bank as the owner thereof.

The entries made by the receiver after the suspension of the Fidelity Bank in no way change that ownership. This case on the state of facts presented by the petition is clearly distinguishable from that class of cases where a party sending a draft, check, or note through his banker for collection, is credited at the time with the amount of such paper as *cash*, and has the right to draw against such credit before actual collection by the bankers. Where a bank and its customer treat checks, notes, or drafts as *cash* and place the amount of such paper to the credit of the depositor with the right to draw immediately upon such credit, the bank may be considered as having purchased or discounted the paper, and thereby become its owner. The present case does not fall within the principle which controls that class of cases. The authorities on the question here presented have been examined, but I have not deemed it necessary to review them in detail. On the facts presented, the principles of law which control the rights of the parties are clear and well settled. See *Levi* v. *Bank*, 5 Dill. 107; *Bury* v. *Woods*, 17 Mo. App. 245; *Bank* v. *Bank*, 76 Ind. 561; *White* v. *Bank*, 102 U. S. 658–661.

The conclusion of the court is that the Winters Bank is entitled to the $2,000, collected by the Baltimore Bank for its account; that the money having come into the hands of the receiver should be paid over by him to the Winters Bank, to whom it rightfully and justly belongs. The receiver is accordingly so instructed.