(Decided July 19th, 1866.)

THE CECIL BANK vs. WILLIAM HEALD, G. SPURRIER, ET AL.

PROMISSORY NOTES: RIGHTS OF BONA FIDE HOLDER OF NEGOTIABLE PAPER FOR VALUABLE CONSIDERATION, WITHOUT NOTICE.—The

Cecil Bank enclosed to J. L. & Co., of Baltimore, certain promissory notes endorsed "for collection." The notes being payable in Jersey City were remitted by J. L. & Co., endorsed "for collection," to a bank in that city, which having made the collections and deducted therefrom the amount due the bank by J. L. & Co., remitted the balance by check on a New York bank to J. L. & Co., payable to their order. On the 30th of October, 1860, J. L. & Co. failed, and on the 31st endorsed said check in blank and sent it to S. H. & E. in part payment of a debt due them by said J. L. & Co. The Cecil Bank sued S. H. & E. to recover the proceeds of the check.—HELD:

1st. That the check being a negotiable instrument, though given in part payment of such a debt, if it was received in good faith and without any notice of the right or claim of the Cecil Bank, by S. H. & E., they were entitled to the benefit of the payment.

2nd. That the general principle of commercial law, that a *bona fide* holder of a negotiable instrument for a valuable consideration without notice, will be protected against the antecedent equities of the original parties, is fully established, as also the doctrine that the holder will be protected where the instrument is applied in payment of an antecedent debt, regarding such antecedent debt as a valuable consideration.

PRACTICE: EXCEPTION,—WHEN TO BE TAKEN: PRESUMPTIONS: WAIVER. In the process of the trial certain evidence having been offered by the plaintiff and objected to by the defendants, and the objection sustained, was not pressed, but prayers were submitted on both sides. In the argument on the prayers, the plaintiff's counsel stated, that before the jury he would rely upon the said evidence, which being objected to by the defendants, and the objection sustained, the plaintiff excepted.—HELD:

That the exception was not taken in proper time, and it will be presumed that the objection was waived.

APPEAL from the Superior Court of Baltimore city.

This was an action brought by the appellant against the appellees to recover the sum of $3,438.85 alleged to be the proceeds of certain promissory notes sent by them to Josiah Lee & Co., endorsed, "for collection," which sum it was also alleged the said Lee & Co. had paid over, when collected, to the appellees, in payment of their own pre-existing debt. The facts are sufficiently stated in the opinion of this Court. The questions which have been passed upon by this Court

on this appeal, arise upon exceptions taken by the plaintiff to the rulings of the Court below, (MARTIN, J.,) as to the inadmissibility of certain evidence offered by the plaintiff, and rejecting the prayers of the plaintiff, and granting those of the defendant.

The cause was argued before BOWIE, C. J., BARTOL, GOLDS-BOROUGH, COCHRAN, and WEISEL, J.

*J. Mason Campbell* and *George H. Williams,* for the appellant, argued:

That the Act of 1836, chap. 97, authorizing special partnerships in this State, prohibits any such as to banking, and that the business of the appellees having been proved to be that of banking, all the appellees are liable as general partners; that even if the terms of the partnership were known to the appellant prior to the payment over of the check, it would make no difference, but that of such knowledge there was no evidence; and that the money of the appellant having been carried into the funds of said banking house in payment of a debt due to it, theretofore existing, all the partners are equally liable for its return.

That in collecting said notes, Lee & Co. were special agents of the appellant for the purpose of collection, and had no other power or duty in regard to them but to collect and pay over; and that no knowledge of Lee & Co., as to a special partnership of the appellees, affects the appellant, unless the partnership was specially connected with, or had reference to, the matter of the special agency.

That their fraud in appropriating the property of the appellant to pay therewith a debt antecedently existing from them to the appellees, could not transfer the property to the appellees, and the withholding of the same by the appellees, after demand, makes them participants in the fraud.

That to obtain a title to the funds of appellant, the appel-lees must, at the time of so receiving, have given some con-sideration therefor, or some new credit, or extended some old credit on the faith of such payment; and that receiving it simply in payment of an antecedent debt, will not enable them to acquire title. *T. Wilson & Co. vs. Smith*, 3 *How.*, 763. (*Id.*,) 1 *How. S. C. Rep.*, 235. *Bank of Metropolis vs. New England Bank*, 6 *How.*, 212. *McBride vs. The Farmers Bank*, 25 *Barb.*, 658. *Cecil Bank vs. Farmers Bank of Md.*, 22 *Md. Rep.*, 148. 4 *Abbott's Dig.*, 88. *Wie-ser vs. Dennison*, 6 *Selden*, 68, 76. 3 *Kent's Com.*, 27. *Girard vs. Pratt*, 2 *Stark.*, 57. *Buller vs. Harrison, Cowp.*, 565. *Cranch vs. White*, 27 *Eng. C. L. Rep.*, 438. *Cod-dington vs. Bay*, 20 *Johns.*, 637. *Farrington vs. Franklin Bank*, 31 *Barb.*, 187. *Bramwell vs. Becket*, 31 *Maine*, 205. *Lawrence vs. Stonington Bank*, 6 *Conn.*, 521. *Goodman vs. Simonds*, 20 *How.*, 370. *Andrews vs. Shott*, 10 *Barr.*, 447.

That Lee & Co. having failed and closed their banking house on the 30th, and having the next day transferred their business and mail matter to the appellees, anything received thereunder was not received in due course of business; it was rather received in an unusual and extraordinary course of business; and their knowledge that Lee & Co. were bankers and collecting agents sufficed of itself after their failure to put the appellees, to whom everything was trans-ferred, upon enquiry as to true ownership.

For the aforegoing reasons, the Court erred in admitting the evidence, to which the appellant objected in the first bill of exceptions, and in rejecting the appellant's prayer, and granting the prayers of the appellee.

Also, that the Court erred in rejecting the evidence of Gerard Gover set forth in the third bill of exceptions. The whole was rejected, part was certainly good; it brought home the knowledge of the failure of Lee & Co., and the

transfer of all the business, on the very day this check was received and paid to the appellees, and thereby rebutted the proof that it was received either in good faith or in due course of business by them; and the Court, in denying the right of the plaintiff to give this proof, denied the right to disprove what the appellees, in their second prayer, considered vital to their defence, and what the Court, in like manner, considered vital in granting the prayer. The proof was admissible whether the witness knew of his own knowledge or not, any thing of the delivery over of the check in question; the transfer of all the business of the day carried with it, either full knowledge of everything relating to the business of the day, or put them upon enquiry; and the accepting the transfer of Lee & Co's business on that day, obliged the appellees to do, with regard to the business of that day, everything that Lee & Co. should have done; this check, that day received, instead of sending to its lawful owner, they wilfully and fraudulently appropriated, with what the law imputes as full knowledge, and the evidence of said Gover was directly to establish this point.

*Thomas S. Alexander* and *Theo. B. Horwitz,* for the appellees:

1st. The appellee, Heald, was a special partner in the firm of Spurrier, Honeywell & Evans. But it was claimed on the part of the plaintiff, that a limited co-partnership, for the purpose of banking, was not legalized by the Code, Art. 72, and that by the general rule of law, Heald was responsible, as general partner, for all the debts of the partnership. To meet this pretension the defendants proved, that at the time of the commencement of business relations between the two firms, the firm of Josiah Lee & Co., (through whom the plaintiff was obliged to claim,) had notice of the terms of agreement of co-partnership of Spurrier, Honeywell & Evans.

Cecil Bank vs. Heald et al.

This evidence was objected to by the plaintiff, but the objection was overruled, and the evidence was given to the jury.

And at a later stage of the cause, the Court, by rejecting the plaintiff's prayer and granting the first prayer on the part of the defendants, virtually instructed the jury that at the time of dealing between the two firms, Josiah Lee & Co. had notice of the terms of agreement under which the firm of Spurrier, Honeywell & Evans was carrying on business, and that neither the former firm, nor any person claiming through that firm, could charge Heald with any greater responsibility than he had assumed by said agreement. *Story on Agency,* secs. 140, 451. *Weiser vs. Dennison,* 10 *N. Y. Rep.,* 77. *Story on Contracts,* secs. 203, 206. *Gow. on Part.,* 4. *Story on Partnership,* secs. 128, 74 & 18, 19. *Collyer on Partnership,* secs. 98, 387, 388, 389. *Winship and others vs. The Bank of the U. S.,* 5 *Peters,* 561, 564. *Willis vs. Dyson,* 1 *Starkie,* 164, (2 *Eng. C. L. Rep.,* 340.) *Galway vs. Matthew,* 1 *Campbell,* 405. *Leavitt vs. Peck,* 3 *Conn. Rep.,* 128. *Hastings et al. vs. Hopkins et al.,* 28 *Vt.,* 116, 117, (2 *Williams.*)

2nd. In response to the second instruction given, the jury have found that the check remitted by the Merchants and Traders Bank to Josiah Lee & Co., was endorsed and paid over by the said firm to the defendants, and that said payment was accepted by the defendants in good faith, in due course of business, and without any notice of the pretended right or claim of the plaintiff to said check.

The plaintiff's prayer (which was rejected) insisted, that if the notes offered in evidence were specially endorsed by the plaintiff to Josiah Lee & Co., and that said firm received from its correspondent in New Jersey, on account and in part of the proceeds of said notes, the check in question, and that said check was paid over to the defendants, and that the defendants received the money therefor, then the plaintiff was entitled to the verdict, although the said payment

over was on account of an indebtedness of the said Josiah Lee & Co. to the defendants, theretofore existing, and by necessary implication, although such payment was received in good faith, in due course of business and without notice of the pretended right or claim of the plaintiff.

The appellees insist, that the plaintiff's prayer was rightly overruled, and the second prayer offered on the part of the defendant was rightly granted. It is not to be overlooked, that the check in question was payable to Josiah Lee & Co., and was remitted expressly in payment of a balance due to that firm by the Merchants and Traders Bank.

That a payment made in discharge of a pre-existing indebtedness, received in good faith, in due course of business, and without notice of the right or claim of the third person to the money so paid, will be a good payment as against such third person. *Goodman vs. Simonds*, 20 *Howard S. C.*, 371, 372. *Magee vs. Badger*, 35 *Barbour, S. C., N. Y.*, 264. *McCreedy vs. Robert Cann*, 5 *Harrington*, (*Del.*,) 175. *Dixon vs. Dixon*, 31 *Vt.*, 455, (2 *Shaw.*) *Bank vs. Chambers & Frost*, 11 *Richardson S. C. Rep.*, 661. *Bank of the Republic vs. Carrington & Others*, 5 *R. I.*, (2 *Ames*,) 520. *N. Y. Marbled Iron Works vs. Smith*, 4 *Duer*, 377. *Carlisle vs. Wishart*, 11 *Ohio*, 191, 192. *Williams vs. Little*, 11 *N. H.*, 70, 71. *McCasky vs. Sherman*, 24 *Conn.*, 612. *Roxborough vs. Messick et al.* 6 *Ohio N. S.*, 452, 453. *Gwynn & Co. vs. Lee et al.*, 9 *Gill*, 141, 142. *Ellicott vs. Martin, Love & Co.*, 6 *Md. Rep.*, 515, 516. *Swift vs. Tyson*, 16 *Peters*, 14, 20, 21, 22. 2 *Parsons on Notes & Bills*, 84.

3rd. It will be apparent that the objection taken by the defendants to the testimony of Gerard Gover, as disclosed by the third bill of exceptions, was taken to the statement by the witness "that on the 31st of October, 1860, all the mailed letters of the firm of Josiah Lee & Co. and the business of the firm of that day were handed over to the defend-

ants." This, we say, will be apparent, as well from the structure of the entire exception as from the statement in the first exception that the plaintiff proved at the trial, "that Josiah Lee & Co. had failed on the previous day, and were utterly insolvent, and had never resumed business." After this proof had been admitted, without objection, it is not to be imagined that the defendants would have objected to the statement by this witness, that the firm of Josiah Lee & Co. "failed and closed its banking house on the 30th of October, 1860," and if the objection had been made, it is yet less credible that the plaintiff would have acquiesced in the objection. But the objection being made and the witness having further stated that he could not speak of the delivery of the check in question, as of a fact within his own knowledge, the objection was renewed and acquiesced in and the witness was withdrawn, and, as a necessary consequence, the statements were excluded.

At a later stage of the trial, that is, after the examination of the witnesses had been closed, and the prayers had been submitted, in the course of the argument thereon, the counsel for the plaintiff stated, that he would, in his argument before the jury, rely on the above statement of the witness as proof that the said check had not been passed over "in due course of business." The counsel for the defendants insisted, that the said statement was not in evidence in the cause. He stated, further, that at the time of the examination of said witness, the defendants had in Court witnesses by whom they would have explained any unfavorable inferences which could have been drawn from the statement of the witness, and if their objection had been overruled they would have examined said witnesses to that point. And said counsel further offered to permit said testimony to go to the jury, provided said rebutting testimony was also permitted to go to the jury. But the Court rejected the tender so made

by the defendant's counsel, declaring that the said statement, so made by the witnesses, was inadmissible as evidence and was to be treated as out of the case, to which declaration and opinion of the Court, and its refusal to permit the said statement to be used as evidence before the jury, the plaintiff excepted.

The exception was, therefore, taken to the refusal of the Court to permit the plaintiff to use, as evidence, the statement of a witness which was objected to when made, and had been withdrawn in consequence of such objection.

The plaintiff did not ask leave to re-examine the witness, upon the ground of misapprehension as to the effect of the withdrawal of the witness in the face of the objection. Nor did he accept the offer of the defendants to withdraw the objection, on condition that their rebutting evidence should be admitted. The pretension was, that the statement was properly in evidence and might be used as such, and the Court decided, simply, that it was not in, and could not be used as evidence.

It is submitted:

1st. That this decision is not subject to revision or appeal.

2d. That it was properly made. By acquiescing in the objection made by the defendants, the plaintiff avoided a decision thereon by the Court, and his withdrawal of his witness under the circumstances, ought to be attended with the same consequences as if the evidence had been formally excluded.

3d. But if the exception had been taken to the formal exclusion of the statement as inadmissible evidence, it could not be sustained. It was not shown that the check was paid to the defendants at or after the time when it is alleged the mail matter of the day was handed over to them. And if the payment of the check and delivery over of the mail matter had been contemporaneous, the defendants would have had no notice of the pretended right of the plaintiff to the

check, nor of any fact which would have put them upon inquiry. The letter enclosing the check stated that the remittance was made for balance in the hands of the remitters, belonging to Josiah Lee & Co. And it was not shown that the defendants had any notice of dealings between the plaintiff and Josiah Lee & Co. Unless, therefore, it can be maintained that the delivery by a failing house of its mail matter for the day to a favored creditor, obliges the latter to take notice of and enquire into the state of accounts between that house and all its customers, and deprives a creditor of the house of his right to accept payment out of funds *prima facie* belonging to and in the actual possession of the house, the evidence tendered must be deemed inadmissible.

GOLDSBOROUGH, J., delivered the opinion of this Court—BARTOL and COCHRAN, J., dissenting :

The appellant instituted suit in the Superior Court of Baltimore city, to recover from the appellees the sum of $3,438.-85 alleged to be the proceeds of certain promissory notes sent to Josiah Lee & Co., specially endorsed " for collection.' These notes were payable in Jersey city, New Jersey, and were transmitted by Lee & Co., to J. S. Fox, Cashier, and endorsed "for collection." They were collected by Fox, as Cashier of the Mechanics and Traders Bank of Jersey city, who, after deducting from the amount collected a balance due by Lee & Co. to said Bank, remitted the residue by check on the Continental Bank of New York. This residue is the amount claimed by the appellant.

This check was remitted to Josiah Lee & Co., made payable to their order, dated the 29th of October, 1860, and received on the 31st of the same month. Lee & Co. endorsed it in blank and sent it, on the last named day, to the appellees, who applied it in part payment of a *debt* due by Lee & Co. to the appellees.

Lee & Co. failed on the 30th of October, the day before they sent the check to the appellees, and on an investigation of their affairs they were found to be utterly insolvent.

At the trial, the plaintiff proved that the defendants, as bankers, were partners under articles of co-partnership by which they were associated for the purpose of conducting "a banking, bank note, exchange, bill broking and stock business." It also appeared that William Heald, one of the alleged partners, had contributed $30,000 as special partner, and that he had stated his intention not to draw his share of profits, but to suffer them to accumulate for the benefit of Spurrier, one of the defendants, his son-in-law, and Spurrier's children, who were his, Heald's, grandchildren.

In the progress of the trial, three exceptions were taken by the appellant to the ruling of the Court. The first relates to the objection to evidence offered by the appellees that Lee & Co. had notice of the terms of agreement for special partnership between the appellees, the appellant insisting that such proof would not affect it; the Court overruled the objection and admitted the evidence.

The second exception was taken by the appellant to the ruling of the Court rejecting its prayer, and granting the two prayers of the appellees.

The third exception was taken because the Court declared the evidence of Gerard Gover, offered by the appellant, inadmissible, and that it was to be treated as out of the case. The circumstances attending this exception will be noticed in treating of it.

In disposing of the questions presented by these exceptions we shall reverse the order of them, and first consider the third exception. This exception was not, in fact, taken until the prayers of the respective parties had been submitted. No exception was taken to the opinion of the Court when first announced; the appellant, therefore, must be presumed to have waived its objection. The ruling of the Court was fully

Cecil Bank *vs.* Heald et al.

justified under such circumstances. See *Davis vs. Patton*, 19 *Md. Rep.* 120, and the cases there cited.

The second exception involves the ruling of the Court in granting the appellees' second prayer. It is important, in this connection, to recur to the appellant's cause of action. The suit was brought to recover from the appellees the amount received by them on a check of the Mechanics and Traders Bank of New Jersey, on the Continental Bank of New York, payable to the order of Josiah Lee & Co., by them endorsed in blank, and given to the appellees in part payment of an antecedent debt due by Lee & Co. to the appellees.

This check was, therefore, a negotiable instrument; and though given in part payment of such a debt, if it was received in good faith and without any notice of the right or claim of the appellant to the proceeds of the check, we think the appellees were entitled to the benefit of the payment. The appellant cannot complain of the prayer as granted. It submitted to the jury to find the facts deemed essential by the Court to the appellees' defence.

The general principle of commercial law, that a *bona fide* holder of a negotiable instrument for a valuable consideration, without notice, will be protected against the antecedent equities of the original parties, is fully sustained by numerous authorities, and they uphold the doctrine, also, that the holder will be protected when the instrument is applied in payment of an antecedent debt, regarding such antecedent debt as a valuable consideration. In *Swift vs. Tyson*, 16 *Peters S. C. Rep.*, 1, the Supreme Court declared: " We are prepared to say, that receiving it in payment of, or as security for, a pre-existing debt, is according to the known usual course of trade and business; and why, upon principle, should not a pre-existing debt be deemed a valuable consideration?" Again the Court say: " The question has been several times before this Court, and it has uniformly been held, that it

makes no difference whatsoever as to the rights of the holders, whether the debt, for which the negotiable instrument is transferred to him, is a pre-existing debt, or is contracted at the time of transfer. In each case he equally gives credit to the instrument." In quoting with approbation these extracts, we adopt the law there announced, so far only as it is applicable to the facts of this case. We are not to be understood as expressing any opinion upon the right of a holder of a negotiable instrument received by him " as *security* for a pre-existing debt."

The case of *Swift and Tyson* was elaborately argued, and the authorities, both in England and in this country, carefully collated and reviewed in the opinion of the Supreme Court.

In the case of *Goodman vs. Symonds,* 20 *How. S. C. Rep.,* 343, decided in 1857, the case of *Swift and Tyson* is recognized in the following emphatic language: " A well defined and correct exposition of the rights of a *bona fide* holder of a negotiable instrument was given by this Court in *Swift vs. Tyson,* (16 *Peters,* 1,) as long ago as 1842, and we accept that exposition relative to the point under consideration, on the present occasion, as one accurately defining the nature and character of the title to those instruments which such holder acquires when they are transferred to him for valuable consideration."

In *Goodman vs. Harvey,* 4 *Adol. & Ellis,* 870, Lord DENMAR said: " Where the bill of exchange has passed to the plaintiff without any proof of *bad faith* in him, there is no objection to his title." We have only to reverse the parties to make this decision applicable to the case at bar. See *Ch. on Bills,* 12*th Ed.,* 257.

The Superior Court having properly granted the appellees' second prayer, ruled correctly in refusing to grant the prayer of the appellant. And a majority of this Court having sanctioned the ruling of the Court in granting the appellees' second

prayer, it is unnecessary to pass upon the question of notice contained in the first exception, or the question of partnership embraced in the appellees' first prayer.

