# T. S. REED GROCERY COMPANY *vs.* CANTON NATIONAL BANK.

*Banks—Draft Given in Payment of Goods Not Delivered.*

When the seller of goods deposits in a bank a draft given him in payment, and the amount thereof is credited to his general account, the buyer has no claim against the bank on account of the fraud of the seller or his failure to deliver the goods according to the contract.

Appeal from the Baltimore City Court (DOBLER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES JJ.

*Emil Budnitz*, for the appellant.

*Lester L. Stevens* (with whom was *Daniel L. Brinton* on the brief), for the appellee.

JONES, J., delivered the opinion of the Court.

This case, as appears from the record, arose out of the following facts. The appellant is a corporation doing business in the State of Texas. The William Fait Company is a corporation doing business, as packers of oysters, fruits and vegetables, in the city of Baltimore, in this State. On September 3rd, 1902, the appellant, per contract in writing, purchased of the William Fait Company 400 cases of "Standard String Beans." On September 5th, 1902, the William Fait Company sent to the appellant an invoice for said goods in which the terms of payment therefor were expressed as "sixty days acceptance or cash less 1½ per cent in ten days." On September 16th, the appellant, availing of the ten days provision of the contract, remitted to the William Fait Company a draft on the Mercantile National Bank of New York City for the invoice price of the goods. This draft was endorsed by the said payee company, "for deposit only to credit of William Fait Company," and de-

posited by said company in the Canton National Bank, in the · city of Baltimore, the defendant in the Court below and the appellee here; and was by the said bank placed to the credit of the said corporation depositor.   In the usual course of business the same was collected on or about the 24th of September, 1902; and the proceeds thereof were retained to the credit of the William Fait Company.

On the 13th of September, 1902, without the knowledge of the appellant, the William Fait Company drew on the appellant at sight; and attaching the bill of lading of the goods sold, per the contract which has been mentioned, to the draft, had the same discounted by the Baltimore Warehouse Company. This last-mentioned draft with the bill of lading attached was presented to the appellant at Beaumont, Texas, on September 17th, 1902, and payment thereof was refused on the ground that the goods in the bill of lading mentioned had already been paid for by the appellant's draft of the 16th of September, heretofore mentioned.  On September 26th, 1902, the William Fait Company, being then insolvent, went into the hands of receivers appointed by the Circuit Court of Baltimore City to take charge of it's affairs and was thereafter adjudicated a bankrupt by the United States District Court for the District of Maryland.    On the 18th of October, 1902, the draft of the William Fait Company of the 13th of September, previous, which had been discounted by the Baltimore Warehouse Company was paid by the appellant, upon the same being then again presented, "in order to obtain" the goods covered by the bill of lading attached thereto.

The case was submitted to the Court below upon an agreed statement of facts which concludes as follows "the proceeds of said draft of plaintiff of September 16th, 1902, were placed to the credit of the said William Fait Company in due course of business, and became part of the general funds of the bank, subject to the check of the William Fait Company; that deposits were afterwards made by the said William Fait Company on it's own account, and checks to the amount of more than $15,000 drawn thereon, and at the time of the failure of the

said William Fait Company it was indebted to the defendant (appellee) in more than the sum of $12,500 and it applied the balance of the general account of the William Fait Company, amounting to $4,000 to it's claim against it, but which indebtedness matured after the appointment of receivers." Resting its claim upon the state of facts which have been recited the appellant sued the appellee in the Court below in an action of *assumpsit* for money had and received to recover from the appellee the proceeds of the draft of the 16th of September, 1902, deposited with and collected by the appellee as has been set out. At the trial of the case the appellant offered two prayers which were rejected by the Court. The appellee offered one prayer to the effect that there was no evidence in the cause "legally sufficient to show any claim by the plaintiff against the defendant on the cause of action sued on in this case, and the verdict must be for the defendant" (appellee). This prayer the Court granted and rendered a finding and judgment for the appellee accordingly.

This appeal brings up for review this action of the Court below in rejecting the prayers of the appellant and the granting of the prayer of the appellee. In such action we find no error. The first prayer of the appellant affirmed that under the agreed statement of facts in the cause the plaintiff (appellant) "was entitled to a verdict for the amount of the draft of September 16th, 1902, remitted by the plaintiff to the William Fait Company, and deposited by "that company" with the defendant (appellee) with interest in the discretion of the Court:" and the second "that if the indebtedness of the William Fait Company to the defendant (appellee) mentioned in the agreed statement of facts, was not incurred on the faith of the check or draft of September 16th, 1902, remitted by plaintiff (appellant) to the William Fait Company, then the plaintiff" (appellant) was "entitled to recover the amount of such draft with interest in the discretion of the Court."

The propositions of law asserted in the prayers of the appellant are not applicable in the circumstances of this case. We will pass over all inquiry as to whether these prayers are

open to criticism in any other respect, and consider them only in respect to the substantial question intended to be raised by the propositions submitted in the instructions asked for in the Court below. This question is: has the appellant legal ground for recovery in the action here brought upon the facts appearing as a basis therefor? The appellant relies upon the case of *Miller* v. *Farm. & Mechanics' Bank*, 30 Md. 392, to control the decision of this. There is however a marked and obvious distinction between that case and the one at bar. In the case referred to the plaintiffs were the holders of the promissory notes for the proceeds of which they sued the defendant bank These notes were payable to their order and the property in the notes was in them. They endorsed them without restriction to Josiah Lee & Co., a banking firm in Baltimore City, but received no consideration or value for them and passed them to the said firm only for collection. Josiah Lee & Co. endorsed the notes to the cashier of the defendant bank "for collection." These notes were paid as they matured, one on the 27th and the other on the 29th of October, 1860, and the proceeds were credited to Josiah Lee & Co. On the 30th of October this firm failed. At the time of the failure there was a balance of account against them and in favor of the collecting bank to an amount greater than that of the proceeds of the notes. The plaintiffs sued in *assumpsit* to recover from the bank these proceeds. It will be seen that the plaintiffs in the action based upon this state of facts, were suing for the recovery of their property. They were the owners of the promissory notes, and as they had endorsed these to Lee & Co. only to have them collected they were entitled as against Lee & Co. to the proceeds of the notes. It appearing that Lee & Co. had endorsed the notes to the defendant bank for collection this Court held that the owners of the notes, the plaintiffs in the case, had the right to treat the collecting bank as their agent in making the collection and to recover the proceeds from it in an action of *assumpsit* in the absence of any equity, which might have arisen under the rules and principles governing the transfer of commercial paper, to affect their right

of recovery; and in this connection and as stating the principle involved quoted from the case of *Wilson* v. *Smith*, 3 How. 763, the following as the rule, well established; "Whenever by express agreement between the parties, a sub-agent is to be employed by the agent to receive money for the principal, or where authority to do so may fairly be implied from the usual course of trade, or the nature of the transaction, the principal may treat the sub-agent as his agent, and when he has received the money, may recover it in an action for money had and received." There was therefore in the case, to which reference is here being made, a privity between the plaintiffs and the defendant, as respected the cause of action, going to support the right of the plaintiffs to maintain the action; and the Court indicated that there could be no doubt about their right to recover if the facts which have been mentioned stood alone; but said that, as affecting this right, there was, upon the evidence in the case, in view of the character of the endorsement made by the plaintiffs to Lee & Co., the further question whether the defendant bank had, before it had knowledge that the notes, involved in the controversy, belonged to the plaintiffs, given credit to Lee & Co. on the faith of the notes.

In the case at bar the draft of the 16th of September, 1902, the proceeds of which are here being sued for, was not sent by the appellant to the William Fait Company as the property of the appellant, and to be collected for its account, or to have the proceeds placed to its credit. It was sent to carry out, on its part, the contract of the 3d of September, 1902, and in performance of the obligation which the contract imposed upon it. It was intended that the draft, and the proceeds thereof when collected, should be the property of the William Fait Company. When this company endorsed it to the appellee bank and it had been collected and the proceeds placed to the credit of the company, and had become as expressly stated in the agreed statement of facts "part of the general funds of the bank," there arose, in respect to these proceeds, between the appellee and the William Fait Company the relation of debtor and creditor. *Hardy* v. *Chesapeake Bank*, 51 Md. 562 (585);

*Tyson & Rawls* v. *West. Nat. Bank,* 77 Md. 412 (416); *Colton* v. *Drovers' Bldg. Assn.,* 90 Md. 85 (89). That is to say the bank became the owner of the money and the debtor to that extent of the depositor. This, at least, would be so according to the settled, ordinary rule governing transactions of this character between a bank and its customers. Is there anything to except the transaction here in question from this rule? There was certainly nothing immediately accompanying the transaction to so except it. It was said in the case of *Tyson & Rawls* v. *West. Nat. Bank, supra,* "we must judge of the legal rights by the state of facts which exist at the time they arise; and not by events which occur afterwards."

It is said it was a fraud upon the appellant for the William Fait Company to retain the draft of the 16th of September, 1902, and apply the proceeds to its own use after it had discounted the draft with the Warehouse Company and given that corporation control of the goods sold to the appellant through its possession of the bill of lading. The breach of duty to the appellant upon the part of the William Fait Company however did not consist in the appropriation to its own use of the draft of the 16th of September, 1902. That was intended by the appellant as a payment to that corporation of the purchase-money for the goods purchased by the contract of September 3rd, 1902. This purchase-money the William Fait Company was entitled to get if the contract was to be performed. At the time the vendor received the draft of September 16th in question and placed it for collection for its account the appellant had not paid the draft discounted by the Warehouse Company. On the contrary it had expressly refused to pay it on the ground that the purchase-money of the goods described in the accompanying bill of lading had already been paid by the draft of the 16th of September. Up to this point therefore the appellant had done nothing more than to perform its part of the contract by paying the purchase price of the goods sold to it by the contract of September 3rd. It then became the duty of the William Fait Company, the vendor of the goods, to deliver them to the appellant. This it

could have done by taking up the draft given to the Warehouse Company and releasing the goods for the benefit of the appellant; but if it failed to do this; or for any reason at all failed to deliver the goods in performance of its part of the contract between it and the appellant, such failure constituted the breach of duty and the fraud made apparent from the facts in the case which undoubtedly gave to the appellant a right of action against its vendor. The appellant upon this breach of the contract could have sued for damages for the breach; or could have rescinded the contract and brought an action for money had and received against the vendor in the contract to recover back the purchase-money which it had paid, *Pott & Co.* v. *Schmucker*, 84 Md. 535. All this however was between the appellant and the William Fait Company. As respects the appellee it was *res inter alios.*

At the time the appellee collected the draft of the 16th of September in question the appellant was in the attitude of insisting upon the contract it had made with the William Fait Company. It had not then elected to ignore the contract and sue to recover back from the William Fait Company the purchase-money for the payment of which the draft was given. It made no attempt whatever to prevent the collection of the draft by any sort of notification to the bank on which it was drawn, nor to its vendor, the payee thereof; and certainly not by any to the appellee. The draft was collected, the proceeds were placed to the credit of the William Fait Company; "became part of the general funds of the bank, subject to the check of the" depositor; and it is fairly inferable from the agreed statement of facts (Code, Art. 26, sec. 15) became in part the basis of credit upon which subsequent advances were made to the William Fait Company to the extent of leaving that corporation at the time of its failure and insolvency a debtor to the appellee. Upon such a state of case it is not perceived upon what principle of commercial law, or rule governing the transfer of commercial paper the proceeds of the draft in question, for which the appellee is here sued, can be held to be the property of the appellant to be recovered of the

appellee in an action for money had and received.   The judgment below will therefore be affirmed.

*Judgment affirmed with costs to the appellee.*

(Decided January 13th, 1905.)