# CHICAGO BONDING AND INSURANCE COMPANY

## *vs.*

## ABRAHAM OLINER.

*Burglary Insurance—Intoxicating Liquors—Value—Effect of Prohibition.*

An insurance contract is one whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils. p. 410

That the particular article insured is not quoted in the daily paper affords no sufficient ground for saying that it has no value at all. p. 411

That dealing in the article is no longer permitted by the government does not show that the article has no value. p. 411

In an action on a policy of burglary insurance, the measure of damages on account of the loss of articles stolen is their fair value at the time of the burglary. p. 411

In an action on a policy of burglary insurance based on the stealing of intoxicating liquors owned by plaintiff, evidence of their cost price to plaintiff is sufficient on which to base a verdict, it being well known that the effect of the prohibition of their sale has been to increase the price at which they can be obtained, and the liquors in question having been purchased by plaintiff before the prohibition legislation. p. 412

*Decided November 16th, 1921.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.).

Action by Abraham Oliner against the Chicago Bonding and Insurance Company on a burglary insurance policy. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was submitted on briefs to BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Edward L. Ward* and *Edwin W. Wells,* for the appellant.

*Myer Rosenbush,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The appellee, Abraham Oliner, resided at the time of the occurrence hereinafter mentioned in the Lake Court Apartments on Linden Avenue and had been engaged in the liquor business at Howard and Camden Streets. When what is known as the War Time Prohibition Act went into effect, he closed out his business at Howard and Camden Streets and moved up certain unsold liquors to the apartment house building where his apartments were located. In the cellar of that building was a locker-room, and in that he placed some of the whiskey moved, and, by way of protecting himself against possible loss, took out an insurance policy of the species known as burglary, larceny or theft insurance. This policy was issued to Mr. Oliner on the 18th of September, 1919. Thereafter, and some time between the issuance of the policy and the 25th of September, his locker was broken into and there were taken from it fifteen cases of whiskey of the brands known as Three Feathers, Canadian Club, Green River, original Roxbury Rye, and Hayner.

The policy issued by the appellant to Mr. Oliner expressly covered property of this description by providing that it should cover:

"Money, sterling silverware, precious stones, watches and jewelry, plated ware, wearing apparel, furs, laces, rugs, tapestries, paintings, clocks, bronzes, bric-a-brac, library books, musical and professional instruments, sporting outfit, bicycles, and household goods and personal effects common in residences generally, including cigars, wines, liquors, and family stores, also gas and electric light fixtures, and plumbing, excluding articles listed in Statement No. 10 of the schedule, sections (b), (c), (d) and (e)";

This liquor, which was so taken, had been purchased by Mr. Oliner at some time previous to the closing of his store at Howard and Camden Streets at varying prices, and upon the discovery of his loss Mr. Oliner made demand on the company for loss in accordance with the terms of the policy.

Eight exceptions were reserved during the trial, but for the purposes of this appeal they may all be considered together, as they form part of a connected whole.

No question is raised by the insurance company as to the loss by Mr. Oliner of the property in question, and the defence upon which the insurance company relies to exonerate it from liability is that, the prohibition order having gone into effect at the time the liquors were taken, they were of no value, and therefore Mr. Oliner suffered no loss. This is raised by objections to evidence which constitute the first seven bills of exception, and the ruling of the court on the defendant's second prayer, which ruling is made the defendant's eighth bill of exceptions.

In discussing the case in its entirety, it will be sufficient therefore to see whether or not the trial court committed any error of such a character as to work a serious injury to the insurance company. To answer this satisfactorily there are one or two facts to be borne in mind. The first of which is a correct conception of the nature of a contract like the one here presented. Thus an insurance contract is one whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils. *Black's Law Dictionary* (2nd Ed.) 641. This is sometimes spoken of as a contract of indemnity. 16 *A. & E. Enc. of Law,* 840; 14 *R. C. L.,* 839.

A large number of cases were cited, and others might have been, descriptive of the contract, wherein the contract is defined in the same or equivalent terms. Nor does this Court understand that there was any serious contention made upon this matter by counsel for the appellant. The real question comes in fixing the rule of damages in such a case.

When we turn to an examination of the various cases, we encounter the expression "value," "market value" and "fair market value," but for the present purpose these may all be regarded as synonymous. The larger part of the exceptions were taken to the admission as evidence of the prices paid by Mr. Oliner for the whiskeys.

In the strict use of language the terms "market value," "value," and "fair market value" may all be dealt with together. It is perfectly true that, at the time of the loss in this case, whiskeys of any of the brands mentioned were not in any regular market reports, and therefore the ordinary methods by which value was proven were not available in this instance. But simply because a particular article is not quoted in the daily paper affords no sufficient ground for saying that it has no value at all. Thus it may have a distinct value as an heirloom, or growing out of association which the then owner of it cherishes for reasons of his own. In the present case Mr. Oliner testified without contradiction that he had reserved these various kinds of whiskey for his own individual use and that of his friends. It is perfectly true that it was no longer an article of merchandise permitted to be dealt in by the government, but that is a very different thing from saying that it had no value. This inhibition on the part of the government against the sale of it would have made traffic in it illegal, that is all, and following the accepted rule of damages in such cases, the damage was its fair value at the time when the burglary or stealing was committed. The general rule of damages was clearly stated by JUDGE ROBINSON in *Webster v. Woolford*, 81 Md. 329. See also 5 *Words and Phrases*, p. 4384, *et seq.*, and cases therein collected, and especially *Atchison, T. & S. F. R. Co.* v. *Stanford*, 12 Kan. 354, 380, where it was held that "if there is no market at the place for the particular goods destroyed, some other criterion of value must be adopted." Se also 3 *Words and Phrases,* second series, p. 301, *et seq.*. This forms, therefore, an exception to the general rule as to the method by which the value

of property is to be estimated, and, when coupled with the well known fact that the effect of the order of prohibition tended to increase rather than decrease the price at which these liquors could be obtained, while not giving us exact data as to its value at the time of the burglary or larceny, makes the cost price paid by Mr. Oliner as close an approximation thereto as it is possible to give. Conditions regulating the traffic in liquors were comparatively a new thing at that time, but the courts must take cognizance of the conditions as they then prevailed, and as exact evidence of the value at the time of the burglary or theft was not available, the cost of the same would afford some ground, sufficient to base a verdict on, in estimating the loss to Mr. Oliner, plaintiff in the case. This, therefore, makes, as already noted, an exception to the rule with regard to proving value or market value at the actual time of the loss.

The attitude of the insurance company was that the plaintiff had not offered any adequate proof of the market value of the property stolen and that therefore the verdict should be in favor of the defendant company. The company had collected from Mr. Oliner the premium for the insurance amounting to $60.50. It had not given Mr. Oliner any notice of the termination of that policy or of its desire to terminate it. It had thus manifested its willingness to carry the risk so long as no claim was made against it, and it was not until after the loss had occurred that they fell back upon the theory that the property stolen had no value whatever. It follows from these conditions that the court below committed no error in its rulings upon the questions of evidence submitted to it, and that the defendant's second prayer, as modified by the court, by which the amount of recovery was limited to the time of the theft, worked no prejudicial injury to the defendant, and the judgment appealed from will accordingly be affirmed.

*Judgment affirmed, with costs.*