## SAMUEL BLACHER v. NATIONAL BANK OF BALTIMORE.

*Checks—Blank Endorsement—Deposit in Bank for Collection— Bank as Holder in Due Course—Burden of Proof.*

Where the relation of agency is dependent upon the acts of the parties, the law makes no presumption of agency, and then it is always a fact to be proved, with the burden of proof resting upon the person alleging the agency to show, not only the fact of its existence, but also its nature and extent.    p. 518

Where checks were endorsed in blank by the payee, and deposited by him with a banker, such depositary, even though merely the depositor's agent, with no authority to transfer the checks except for the purpose of collection, could, by endorsing them in blank to a bank, which took them in the usual course of business, in good faith, before maturity, and for a valuable consideration, give the bank a title which the principal could not defeat.                                      pp. 518, 519

A bank with which were deposited out-of-town checks, endorsed in blank both by the payee and the depositor, and which subsequently presented the checks without unnecessary delay, *held* to have acquired title before maturity, and without notice of an agreement between the payee and the depositor restricting the negotiation of the checks.                            p. 519

The endorsement of checks in blank by the payee thereof imported property in the holder, to whom they were delivered by the payee, and one receiving them from such holder had the right to treat the latter as the owner in good faith.    p. 519

An agreement between a depositor in a private bank and the banker, set forth on the inside of the deposit book, was effective only between the depositary and the depositor, and could not be read into an endorsement in blank by such depositor on checks deposited by him, so as to vary its tenor in the hands of a third party, without notice, Code, art. 13, sec. 50, providing that an endorsement must be in writing and contained on the instrument itself or upon paper attached thereto.    pp. 519, 520

An endorsement in blank by one depositing checks in a bank, previously endorsed in blank by the payee thereof, was a guaranty that the depositor had a clear title to the checks, and the bank was not bound to inquire of the depositor whether it held the checks as agent or in any way other than as owner.    p. 520

The good faith of a bank, receiving on deposit checks endorsed in blank, cannot be impugned because subsequently it became known that the depositor was insolvent at the time of the deposit, it having been a going concern at the time of the deposit, and enjoying the reputation of being financially sound.
pp. 520, 521

A bank which received on deposit checks endorsed in blank, without notice of the fact that the depositor was merely the payee's agent to collect the checks, in good faith and before maturity, acquired an indefeasible title thereto, provided it was a purchaser for value.    p. 521

Upon the deposit of checks with a bank, and their credit to the depositor as cash, the title to the checks passes to the bank, and the relation of debtor and creditor arises between the customer and the bank.    p. 521

A deposit of checks in a bank involves the transfer of the checks to the bank in consideration of an implied promise by it to repay the amount of the deposit on the request of the depositor by his check or draft, and such implied promise makes the bank a holder for value, since value is, by Code, art. 13, sec. 44, "any consideration sufficient to support a simple contract."
·  p. 521

That a bank with which checks, endorsed in blank, are deposited, and which thereupon gives credit to the depositor for the amount of the checks, retains the right to charge to the depositor any such checks returned unpaid, does not prevent the title to the checks passing absolutely to the bank.    p. 522

If the payee of a check neglects his own interest and endorses in blank instead of restrictively, and thereby enables his agent for collection to use the paper as his own, the loss should be borne by the payee, whose own improvident act afforded the agent an opportunity to transfer the negotiable paper according to its purport.    p. 522

The obligation upon the transferee of a check to prove that it acquired the title in due course, under Code, art. 13, secs. 78, 74, 25, does not require it to introduce testimony to that effect if the proof offered by its opponent is sufficient. p. 523

Evidence that checks endorsed in blank were delivered to a bank, by an active customer thereof, for deposit as money to its general account, with a deposit slip indicating the character of the deposit, with no proof of any condition imposing on the bank a duty of inquiry in regard to the ownership of the checks, the consideration for their transfer by the payee to the depositor, or the latter's financial condition, was sufficient affirmatively to establish that the bank was a holder in due course. pp. 523, 524

It was proper, on cross-examination, to allow questions to be asked, or testimony to be given, for the purpose of having the witness develop or explain certain phases of his testimony in chief, in order that its scope and meaning might be better understood by the jury. p. 524

In an action against a bank on account of checks deposited with and collected by it, what purported to be a deposit book such as was used by the bank's customers was properly excluded, in view of proof that the depositor of the checks in question did not use any deposit book, but received deposit slips for each deposit. p. 524

Even if the depositor had used a deposit book, that offered in evidence would not be admissible unless shown to be of the same form as that used by the depositor. p. 524

*Decided December 1st, 1926.*

Appeal from the Court of Common Pleas of Baltimore City (STUMP, J.).

Action by Samuel Blacher against the National Bank of Baltimore. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*David Ash* and *Philip L. Sykes,* for the appellant.

*John Hinkley* and *James P. Walsh,* for the appellee.

PARKE, J., delivered the opinion of the Court.

Bernstein, Cohen & Company was the name under which Max Cohen had long conducted a private bank in Baltimore, and Samuel Blacher, the appellant, a merchant of that city, was one of its old and active depositors. On February 6th, 1925, he made a deposit of fifteen hundred and eighty-nine dollars by endorsing in blank every one of three checks which were drawn on distant banks, payable to his order, and of that aggregate amount. The deposit was contemporaneously entered as a credit on the depositor's pass book, which had on the inside of its cover notice to the effect that items payable out of town, whether credited upon receipt or not, were received and collected by the banking house as the agent of the depositor and at his risk, that the liability of the depositor for such items continued until the bank had received payment thereof, and that until then the bank reserved the right to dishonor any checks issued against such deposits.

After the appellant had endorsed in blank these three checks and the credit had been so given on his deposit book, Bernstein, Cohen & Company endorsed in blank the three checks and, on the same day, deposited them, along with quite a number of other checks, in its general deposit account in the National Bank of Baltimore, appellee, and credit, subject to final payment, was immediately given by the appellee to the account for the aggregate amount of all the checks as though they were cash items. The three checks involved in this litigation were, in turn, endorsed by the appellee in blank and were afterwards paid, and the money was secured by the appellee.

Max Cohen, the proprietor of the private bank, died on February 7th, 1925, and the doors of his banking house were closed on that day. According to the testimony he was, at the time of his death, a millionaire by common repute, but an audit after his death revealed that the banking house had

been insolvent for four years before his death, although the bank had continuously carried on its business and its insolvency was not known by the depositors nor the public until a week after his death.   There is no proof on the record from which it could be found that the appellee had actual or implied notice, either of the terms upon which the appellant made his deposits with Bernstein, Cohen & Company, or of the private bank's insolvency before or at the time of the deposit of the three checks mentioned.

The facts stated, together with a refusal of the appellee to pay the appellant the deposit, were established by the proof of the appellant, as no other testimony was offered, and the principal question for resolution is, Was the granting of a prayer directing a verdict for the appellee a sound application of the law to the facts ?

The theory upon which the appellant proceeded was that he had deposited for collection the three checks with Bernstein, Cohen & Company, and that, therefore, the title to the checks did not pass, and the relation between the depositor and the depositary was not that of creditor and debtor but of principal and agent; and that the appellee was simply a sub-agent for collection, and that, therefore, he could recover the amount collected by the sub-agent on the insolvency of the original depositary.

Where the relation of agency is dependent upon the acts of the parties, the law makes no presumption of agency, and then it is always a fact to be proved, with the burden of proof resting upon the person alleging the agency to show not only the fact of its existence but also its nature and extent. *Mechem on Agency* (2nd Ed.), secs. 255, 281, 298, 316, 318, 1344.   It may be conceded that, as between the appellant and the original depositary, the effect of the notice on the inside of the cover of the appellant's pass book was to make the depositary the agent of the appellant for the collection of the checks deposited; but this relation did not preclude the transfer by the depositary of a title superior to its own. The general rule that the mere possession by an alleged agent of his principal's property is not sufficient evidence either

of title in the agent or of authority in the agent to dispose of it has an exception when the property is negotiable. In the instant case, the checks were endorsed in blank by the payee, who by his own act thereby made them payable to bearer and their title to pass by mere delivery. Code, art. 13, secs. 49, 53. Although the depositary of such negotiable paper had no authority to transfer it, except for the purpose of collection, yet, if the agent's endorsement in blank of the checks was to one which, without notice, took them in the usual course of business, in good faith, before maturity, and for a valuable consideration, there passed to such endorsee a title which the principal could not defeat. *Mechem on Agency*, secs. 978, 2110, 2111 *et seq.; Cecil Bank v. Farmers' Bank of Maryland*, 22 Md. 148, 156; *Cecil Bank v. Heald*, 25 Md. 562, 573, 574; *Miller v. Farmers' and Mechanics' Bank*, 30 Md. 392, 398, 400, 401; *Maitland v. Citizens' Nat. Bank of Baltimore*, 40 Md. 540, 567-569; *Bradford v. Harris and Birckhead*, 77 Md. 154, 160; *et infra.*

The checks were negotiable instruments payable on demand, and, there being, under the circumstances, no unreasonable delay in their presentment, they were due when payment was demanded, which was after their endorsement by Bernstein, Cohen & Company and the appellee. It follows that the appellee acquired title before maturity. The appellee, also, took them without notice of any of the facts which would have tended to establish that the endorsement in blank by the appellant was understood by him and his depositary not to be an authorization of the depositary to negotiate the paper, but was an endorsement and delivery for collection only, and with the agreement that the ownership of the checks should remain in the endorser, and that his endorsee was only his agent for the purpose of collecting the checks and placing the proceeds to credit of his bank deposit account with the endorsee. The endorsement in blank of the three checks by the payee imported property in the holder, and the appellee, who received it from such holder, had the right to treat the holder, who was the appellant, as the owner in good faith. Moreover, the agreement between Bernstein, Cohen

& Company and the payee that the three checks, although endorsed in blank, were taken by the depositary as an agent for their collection, was set forth on the inside of appellant's bank deposit book issued to him by Bernstein, Cohen & Company. It was effective only between the depositary and the depositor, and cannot be read into the endorsement in blank so as to vary its tenor in the hands of a third party, without notice, since the statute expressly provides that an endorsement must be in writing and contained on the instrument itself or upon paper attached thereto. Code, art. 13, sec. 50; *Hammond v. Amer. Express Co.,* 107 Md. 295, 312. Instead of endorsing the checks restrictively (*i. e.,* for collection) and thereby assuring that all subsequent endorsees would acquire only the title of his first endorser under the restrictive endorsement, the payee of the checks endorsed them in blank, and by his election became liable as an endorser who endorses without qualification. Code, art. 13, secs. 84-88 and secs. 55, 56. And the endorsement in blank by Bernstein, Cohen & Company was a guaranty that it had a clear title to the three checks it endorsed, *supra.* Under such circumstances, the appellee was not bound to make inquiry of Bernstein, Cohen & Company if it held the checks as agent or in any other way than as owner. *First Denton Nat. Bank v. Kenney,* 116 Md. 24, 31; *Miller v. Farmers' and Mechanics' Bank,* 30 Md. 392, 398; *Edelen v. First Nat. Bank,* 139 Md. 412, 418; *Maitland v. Citizens' Nat. Bank,* 40 Md. 540, 568, 569.

With nothing in the form of the three checks or in their endorsement to put the appellee on inquiry, these checks, along with a number of others, were listed by the depositing bank on a deposit slip, and then sent to the banking house of the appellee for deposit as money to the credit of the general deposit account of Bernstein, Cohen & Company, and the appellee forthwith accepted the checks and at once so credited their aggregate sum. This was done at the request of Bernstein, Cohen & Company and in the daily routine of the appellee's banking business. The good faith of the appellee cannot be impugned from the fact that subsequent to the

deposit it became known that Bernstein, Cohen & Company
was insolvent at the time of the deposit, because it was a
going concern when the deposit was made, and had long, and
then, enjoyed the reputation of being a financially sound and
prosperous private bank. It thus affirmatively appears that
the appellee, without notice of the depositor's agency for col-
lection, and in good faith and before maturity, acquired an
indefeasible title to the three checks, provided the appellee
was a purchaser for value. *Weant v. Southern Trust Co.*,
112 Md. 463, 471.

In reference to what is requisite to fulfill the condition
"for value" the authorities are in conflict, and no attempt
will be made to review them, because our conclusion is gov-
erned by the doctrine of our own decisions as applied to the
facts stated and these further details.

The deposit slips furnished by the appellee were headed
by the clause "Checks and Drafts Credited Subject to Final
Payment." On these slips entries were separately made of
the amount of bills, coin and checks, and every check was
separately listed. On delivery the aggregate of the several
items of deposit was at once entered as money to the general
deposit account of Bernstein, Cohen & Company, and a slip,
showing the total aggregate amount of the deposit without
giving the separate items, was then handed the depositor as
his receipt for the deposit. Upon the receipt and deposit of
the checks and their credit as cash, the title to the checks
passed to the appellee; and the new relation of debtor and
creditor arose between the customer and the bank. The trans-
action involved a transfer of the checks by the customer to
the bank in consideration of an implied promise by the de-
positary to repay the amount of the deposit in whole or in
fractional parts thereof, on the request of the depositor by
his check or draft. This implied agreement to pay, when
and as requested, an amount equal to the credit given, made
the bank a holder for value, since value is declared by the
Negotiable Instruments Act to be "any consideration suffi-
cient to support a simple contract." Code, art. 13, sec. 44.
And it is clear, from the decisions of this Court, that if

credit be in fact given, or some new obligation or responsibility be incurred in consequence of the unrestricted transfer of the checks, there is a valuable consideration established. *Reed Grocery Co. v. Canton Nat. Bank,* 100 Md. 299, 303, 304; *Tyson & Rawls v. Western Nat. Bank,* 77 Md. 412, 416, 417, 419; *Ditch v. Western National Bank,* 79 Md. 192, 204, 209; *Auto Mfg. Co. v. Merchants National Bank,* 116 Md. 179, 184-189; *First Denton Nat. Bank v. Kenney,* 116 Md. 24, 29, 30; 2 *Morse, Banks and Banking* (5th Ed.), sec. 591, note; *Capital and Counties Bank v. Gordon,* (1903) A. C. 240, 245, 249; *Royal Bank of Scotland v. Totterham,* (1894) 2 Q. B. Div. 715, 717.

It is argued, however, and with the support of authority, that the right claimed and exercised by the bank of charging to the depositor all such checks so endorsed in blank and credited when returned unpaid is not consistent with the theory of an understanding at the time of the deposit that title to the checks passed absolutely; and that the practice of allowing depositors to check against such credits is a gratuitous privilege to be extended or withdrawn at the pleasure of the bank. In reply it may be said that this inconsistency is not real or substantial, since charging a depositor with a credit given for a check, endorsed by him in blank, when the check is dishonored by the drawee bank, is simply enforcing against the depositor his liability in a lawful manner. *Ditch v. Western National Bank,* 79 Md. 192, 204; 1 *Morse, Banks and Banking* (5th Ed.), sec. 324. As was said in *City of Douglas v. Federal Reserve Bank of Dallas,* 271 U. S. 489: "While there is not entire uniformity of opinion, the weight of authority supports the view that upon the deposit unrestrictedly endorsed, and credit of the amount to the depositor's account, the bank becomes the owner of the paper, notwithstanding a custom or agreement to charge the paper back to the depositor in the event of dishonor."

The payee of a check can protect his own rights by the form of his endorsement. If he neglects his own interest and endorses in blank instead of restrictively, and thereby enables his agent for collection to use the paper as its own,

the loss occasioned by the title to the negotiable paper not being in the agent should be borne by the payee whose own improvident act afforded the agent an opportunity to transfer the negotiable paper pursuant to its purport. Innocent subsequent parties should not suffer for reliance upon a negotiable instrument and its endorsement according to their tenor. The rule adopted has the merit of affording such parties the protection of the negotiable paper according to its terms, and finds support in its tendency to protect the integrity of negotiable paper and to give greater security to financial transactions by the assurance that the law will commonly give to checks and other negotiable paper the effect ascribable to their form and content.

The appellant contends that the title of Bernstein, Cohen & Company was defective because it accepted the three checks for collection, while insolvent, and then endorsed them in blank and delivered them as if the insolvent banking house was the owner instead of an agent for collection; and that, therefore, the burden of proof was upon the appellee to prove that it acquired the title as a holder in due course. Code, art. 13, secs. 78, 74, 25. Nevertheless, the obligation to meet this burden of proof does not require the appellee to introduce testimony to sustain his title as a holder in due course, if the proof offered by his opponent is sufficient. The appellant is a corporation conducting a national bank in a large city and employing four receiving tellers to accept the deposits of its customers. The appellant called as its witness the teller who received the deposit embracing the three checks, who made the entry of the credit in the bank's books, and who completed the transaction by making out and delivering to the depositor the credit slip for the deposit. There was nothing in the circumstances to raise any doubt as to the absolute ownership by the depositor of the checks, which were endorsed in blank and delivered by an active customer for deposit as money to its general account, which the depositor maintained for the ordinary purpose of its private banking business. The depositor had indicated by making out a deposit slip how the deposit was to be made, of what

it consisted, its amount, and how it was to be credited. There was not a thing to suggest that the checks were for collection or that there was no consideration for their transfer, or that the depositor was insolvent. The record affords no proof of the existence of any condition which imposed on the appellee a duty to make any inquiry in reference to the ownership of the checks, the consideration for their transfer, or the financial position of its depositor. As the circumstances under which the appellee took the three checks were fully proven by appellee's agents and they affirmatively established that the appellee acquired the three checks as a holder in due course, the appellee has met the burden of proof cast upon him by the statutory provision, and, upon the undisputed facts of this record, the prayer was rightly granted. *Edelen v. First National Bank,* 139 Md. 412, 417-420; *Barnett Shpritz v. Balto. Trust Co.,* 151 Md. 503.

The nine exceptions to the admissibility of evidence are of minor importance. The first six exceptions and the eighth and ninth exceptions are to the action of the court permitting, on cross-examination, questions to be asked, or refusing to strike out testimony given, for the purpose of having the witness develop or explain certain phases of his testimony in chief, in order that its scope and meaning might be better understood by the jury. This is the proper office of cross-examination, and there was no reversible error in the rulings on these exceptions. Nor do we find there was any error in the trial court's refusal to let in what purported to be a deposit book used by the National Bank of Baltimore for its customers. The proof later established that Bernstein, Cohen & Company did not use a deposit book, but received for every deposit a deposit slip. But if the company had such a book, there was no evidence to establish that the proffered book was of the same form.

For the reasons assigned there is no reversible error on this record.

*Judgment affirmed, with costs.*